JOSEPH N. ROBALEWSKI *vs.* SUPERIOR COURT.

FEBRUARY 27, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

JOSLIN, J. This is a petition for certiorari to review a three-year sentence imposed upon the petitioner by a justice of the superior court after a trial and conviction under an indictment for escape from the adult correctional institutions. The petitioner prays that the sentence be quashed as illegal and void. In accordance with the writ the pertinent records have been certified to this court.

The petitioner is presently confined at the adult correctional institutions pursuant to the conviction and sentence. The conviction was sustained by this court. *State* v. *Robalewski*, 96 R. I. 296, 191 A.2d 148.

The petitioner alleges that he was deprived of due process of law in violation of art. XIV of the amendments to the constitution of the United States because of hearsay, prejudicial and inflammatory statements made to the superior court by an assistant attorney general in his presentence recommendations. On the view we take of this case it is unnecessary for us to pass on that allegation.

It is also alleged that petitioner was denied the common-law right of allocution and the "liberty to speak for himself" guaranteed by art. I, sec. 10, of the constitution of this state.

The guarantees of sec. 10 did not originate with the constitution but stem from certain common-law rights of criminal defendants. This has long been settled and was never more articulately enunciated than by Chief Justice Ames who said in *State* v. *Keeran*, 5 R. I. 497, 505:

> "Surely, if any clause in the constitution has a definite meaning, which should exclude all vagaries which would render courts the tyrants of the constitution, this clause, embodying, as it does, with improvements,

the precious fruits of our English liberty, can claim to have, both from its history and long received interpretation. It is no vague declaration concerning the rights of property, which can be made to mean anything and everything; but an intensely practical, and somewhat minute provision, guarding the rights of persons *accused of crime*, at the various points at which they may be exposed, when pursued or on trial, to oppression from the state or its officials."

One of those "precious fruits" was the common-law right of allocution which in ancient times, at least in capital cases, made it mandatory that inquiry be made of an accused as to why the sentence of death should not be pronounced upon him and afforded to an accused an opportunity on his own behalf to offer matters in arrest of judgment and in extenuation of guilt or mitigation of his conduct. 1 Chitty, Criminal Law (3d Am. ed.), p. 700. It developed in England at a time when a prisoner was denied the right to defend by counsel upon a plea of not guilty as to issues of fact in felony and treason cases. In those times it was the obligation of the judge to look after the interests of the criminal defendant, to examine witnesses on his behalf and to guard against an illegal or unjust conviction. 1 Chitty, *supra*, at 407.

Although by what we consider the better view the reason for the inquiry fell once the accused was given the right to counsel, *Dutton* v. *State*, 123 Md. 373, *Warner* v. *State*, 56 N.J.L. 686, *State* v. *Johnson*, 67 N. C. 55, *Sarah* v. *State*, 28 Ga. 576, the necessity for granting him the liberty to speak in his own behalf at the time of imposition of sentence still obtained, *State* v. *Hoyt*, 47 Conn. 518, 544, and it was in recognition of that necessity that the liberty was guaranteed by art. I, sec. 10, of the constitution. If the contemplation had been otherwise, the pattern of art. VI of the amendments to the federal constitution, upon which art. I, sec. 10, is molded, would have been followed and the liberty would not have been included.

The guarantee in art. I, sec. 10, differs, however, from the ancient right. It is broader and narrower. What once was confined to capital cases has been extended to all criminal prosecutions and to inquire is no longer mandatory. Construing it as we do, the constitutional liberty includes the right of an accused, as he stands at the bar after conviction awaiting imposition of sentence, to bring to the attention of the court those matters which one in his position could at common law have spoken when inquiry was made as to why sentence should not be imposed.

We come now to the question of the exercise of the liberty and what, if any, limitations may be prescribed within the constitutional framework.

The liberty is a precious one. That it cannot be denied does not mean that it can be availed of without restriction or that its enjoyment is not subject to reasonable regulation. Abridgment, however, should be exercised with care and caution and curtailment should not take place until the accused, or counsel, or both if appropriate, have had a fair and full opportunity to bring to the court's attention all information germane and of possible assistance in the determination of the sentence to be imposed. No hard or fast rule can be adopted. What is reasonable in one case may be unreasonable in another. Each case must be decided on its facts and in each instance the adoption of limitations is subject to a judicial discretion. *Driver* v. *State,* 201 Md. 25; *Zeff* v. *Sanford,* 31 F. Supp. 736, 738.

Discretion requires a sound judicial judgment made in the interests of justice and fair play, and may not be the subject of whim or caprice or fortuitous choice. As this court has said, "It involves the equitable decision of what is just and proper procedure under the circumstances." *Roy* v. *Tanguay,* R. I., 131 A. 553, 554. Its exercise unless clearly abused will not be reviewed by this court. *State* v. *Shea,* 77 R. I. 373, 377; *State* v. *Greene,* 74 R. I. 437, 442; *State* v. *Hudson,* 55 R. I. 141; *State* v. *Sousa,* 43 R. I. 176.

The record shows that in the course of his presentence recommendations the assistant attorney general referred extensively to the conditions surrounding petitioner's escape and uncooperative attitude which made it difficult for the state to secure his return from California whence he had gone after his escape. When the assistant attorney general had concluded, petitioner's counsel who had not represented him at the time of the escape, in effect requested permission for his client to address the court on those subjects. The petitioner's remarks were limited to three sentences. He referred to the California episode and in substance stated that he had gone there because of advice of his then counsel that in proceedings before our courts the state would be represented by an assistant attorney general who had a personal prejudice towards him. At that point, when obviously petitioner had not concluded his statement, he was interrupted by the assistant attorney general. His request to be heard further was denied, the court saying:

> "The moment you try to extemporize in a manner to invite, you might say, altercation between counsel and you, the court will not permit it. You have counsel and counsel has expressed himself sufficiently to enable the court to decide this case.
>
> "At one time before I had the complete picture of it I am frank to say, as I told Mr. Stanzler, I was inclined to give the man a year, now having the whole picture before me I do agree with the attorney general that this man ought to be sentenced for more than a year. And, my sentence is three years in the adult correctional institutions."

In our opinion petitioner was denied his constitutional liberty to speak in his own behalf and to present for the superior court's consideration his version of incidents not of record and referred to by the assistant attorney general. The record clearly indicates that only petitioner and not his counsel was able to deny or explain the statements of the assistant attorney general and his request should have

been considered in that light. While the court may have been within its province to limit petitioner's gratuitous and unfavorable comments on the assistant attorney general, it was clearly an abuse of discretion to cut petitioner off before he had been afforded a reasonable opportunity to explain, if he could, the incidents brought into issue by the assistant attorney general.

There is, of course, doubt as to what significance the trial justice would have attached to petitioner's statement if he had been allowed to continue. We cannot, however, put ourselves in the trial justice's position and assume that he excluded the remarks of the assistant attorney general which petitioner was denied the right to explain from the "whole picture" which led to the imposition of a three-year rather than a one-year sentence. So long as there was a possibility that the "whole picture" included the unexplained matter, there was a clear abuse of discretion.

It is a non sequitur for respondent to contend that the constitutional requirement was satisfied, because neither counsel nor petitioner refuted "any of the factual statements made by the assistant attorney general" when what is here at issue is whether the superior court should have allowed petitioner to speak in refutation.

The respondent further contends that an alleged illegality in the sentence of an accused who was subject to and was imprisoned in the exercise of the superior court's jurisdiction is not reviewable on a writ of certiorari, the primary function of which is to review the action of a lower tribunal taken in excess of its jurisdiction.

While no case has been called to our attention where certiorari has been used to test the legality of the sentencing procedure, and even though the writ of habeas corpus has been used for that purpose, *Knowles* v. *Langlois,* 90 R. I. 445, *Dawley* v. *Wilcox,* 25 R. I. 297, *Petition of Stone,* 21 R. I. 14, *In the Matter of Hammel,* 9 R. I. 248, we can see

no useful purpose, now that the merits have been fully briefed and argued, in quashing the writ because it would have been more appropriate for petitioner to have sought his release by a writ of habeas corpus. This does not mean that in other circumstances when an appropriate pleading has been filed on or before the return day of the writ of certiorari we would not act otherwise. The ends of justice and the due administration of the law, however, will better be served at this stage of the proceedings if in the exercise of our broad revisory and supervisory jurisdiction we decide this case on the merits. To do otherwise and to require that petitioner start anew by petitioning for a writ of habeas corpus would serve no purpose other than to delay our decision. That delay, in the light of petitioner's present imprisonment, might result in great injury to him and is sufficient ground for us in the exercise of our discretion to determine this matter on the instant petition. See *White* v. *White,* 70 R. I. 48.

For the reasons indicated we conclude that the sentence of the superior court was illegal and void.

The petition for certiorari is granted, the sentence is quashed, and the records certified to this court are ordered returned to the respondent court with our decision endorsed thereon, and with direction to impose sentence on the verdict as required by law.

*Abedon, Michaelson & Stanzler, Milton Stanzler, Richard A. Skolnik,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for respondent.