Bruce LEONARDO

v.

STATE.

No. 81–175–C.A.

Supreme Court of Rhode Island.

April 30, 1982.

Norman E. V. D'Andrea, Providence, for petitioner.

Dennis J. Roberts II, Atty. Gen., Joel D. Landry, Asst. Atty. Gen., for respondent.

OPINION

KELLEHER, Justice.

This appeal concerns a Superior Court petition for postconviction relief in which the petitioner, Bruce Leonardo (Leonardo), seeks to set aside a series of concurrent prison sentences that were imposed upon him in late November 1973. Approximately seven and one-half years later, in March 1981, the petition came on to be heard and denied by the sentencing justice.

The record indicates that on September 17, 1973, Leonardo appeared in the Superior Court for the specific purpose of withdrawing not-guilty pleas entered to four separate indictments that charged him with committing the four respective crimes of kidnapping, rape, sodomy, and robbery and substituting in their stead guilty pleas. Before accepting a change in pleas, the sentencing justice went to great lengths to assure herself that Leonardo's decision represented an intelligent and voluntary waiver of the pertinent constitutional guarantees.

When asked by the trial justice for the factual basis of the plea, an assistant attorney general reported that the state was prepared to prove that in the early afternoon of August 15, 1972, Leonardo was the driver of a van truck that was proceeding along Sessions Street in Providence. In the truck with him were three associates, Edward Raso (Raso), Richard Correira (Correira), and Anthony Gilbert (Gilbert). A fifteen-year-old female was observed walking along the sidewalk, whereupon Leonardo pulled up to the curb. Correira and Gilbert alighted from the rear of the van, grabbed the girl, and dumped her in the rear of the truck. The vehicle then made its way from Providence's East Side to a vacant house in the city's Federal Hill section.

During the westward trip toward Federal Hill, the girl was blindfolded, tied, gagged, and beaten. Upon arriving at the vacant house, the teen-ager was taken by Leonardo and Gilbert to the second floor. There she was forced to disrobe. She was raped by

Leonardo and forced to engage in oral sex with him and one of his companions. While this was taking place, Gilbert searched the girl's clothing and removed from her pockets ninety cents in change and a Social Security card. When the police arrived on the scene, Leonardo and Gilbert fled.

Before detailing the facts to which we have just alluded, the assistant attorney general was asked by the sentencing judge what disposition the state was recommending. In posing the question, the sentencing judge was quick to say, "I want you to understand that I am not prepared to say whether I will accept your recommendation." The assistant attorney general, after acknowledging the trial justice's position, then informed her that the state was recommending "a period of incarceration of 10 years." According to the assistant attorney general, the ten-year recommendation came about because of Leonardo's supplying information which permitted the Attorney General's Department, the state police, and the Providence police to dispose of several pending cases or investigations.

The sentencing justice, in addressing Leonardo, made it clear that if she were prepared to accept the Attorney General's recommendation, she would not hesitate to say so, but, she said, "I have made no such commitment in this case. Do you fully understand this?" Leonardo replied, "I fully understand that, Your Honor." After further extended discussion, the sentencing justice ordered that a plea of nolo be entered in each of the indictments and continued the matter for sentencing, stressing the need of a presentence report. The sentencing justice also told Leonardo that any sentence imposed would be based upon the "presentence report * * * your prior record, * * * any extenuating circumstances that you or your attorney wishes to present and * * * the recommendations made by the Attorney General's Department * * *."

Leonardo returned to Superior Court on November 28, 1973, and was informed by the sentencing justice that "your record and the facts of this case * * * requires a much heavier sentence than the Attorney General

is recommending." She subsequently imposed the following concurrent sentences: kidnapping, twenty years; sodomy, twenty years; robbery, twenty-four years; and rape, twenty-four years.

In turning to the merits of Leonardo's appeal, we reject his claim that the sentencing justice abused her discretion when she refused to adopt the ten-year plan recommended by the Attorney General's representative. The record is crystal clear that at no time did the sentencing justice give any indication that she was to be bound by a ten-year stipulation. At one point in the ongoing colloquy between her and Leonardo, she specifically asked him if any promise had been given to him by anyone, official or unofficial, in regard to the length of the sentence he was to receive. Leonardo responded in the negative. In November 1973 the sentencing justice again minced no words when, after acknowledging Leonardo's cooperation with the police, she remarked that Leonardo's "primitive behavior" on the afternoon of August 15, 1972, called for the imposition of a sentence in excess of the suggested ten-year term.

Although we cannot fault the sentencing justice's exercise of discretion in opting for something more than the ten years previously suggested by Leonardo and the prosecution, we are of a different mind as we consider Leonardo's claim that the sentencing justice failed to accord him his constitutional right of allocution.

In *Robalewski v. Superior Court*, 97 R.I. 357, 197 A.2d 751 (1964), Mr. Justice Alfred H. Joslin, now retired, in writing for this court, noted that the common-law right of allocution made it mandatory, at least in capital cases, that inquiry be made of the accused why the death sentence should not be pronounced upon him and afford the accused an opportunity to offer matters in arrest of judgment and in extenuation of guilt or mitigation of his conduct. Justice Joslin also noted that even though the necessity for inquiry vanished once the accused was given the right to counsel, the necessity for granting him the liberty to speak in his own behalf at the time of

imposition of sentence still remained, and it was in recognition of that necessity that the right of allocution, at least in Rhode Island, rose to a level of constitutional status because in its pertinent portion art. I, sec. 10, of Rhode Island's Constitution guarantees that an accused shall be at "liberty to speak for himself."

This guarantee differs from the common-law right of allocution in that it is broader in several respects. What was once confined to capital cases has been extended to all criminal prosecutions, and there is no longer any necessity for inquiry because our constitutional liberty gives the accused who stands at the bar after conviction, awaiting the imposition of sentence, the opportunity to bring to the attention of the sentencing justice those matters about which one in his position would at common law have spoken when inquiry was made concerning why sentence should not be imposed. This liberty, Mr. Justice Joslin noted, is a "precious" one, and any abridgement of its reach should not take place until the accused or counsel, or both if appropriate, have had a full and fair opportunity to bring to the sentencing justice's attention all information germane and of possible assistance in the determination of the sentence to be imposed. Here, the record clearly discloses that when Leonardo appeared in Superior Court for the imposition of sentence, the sentencing justice, after making some relevant observations, some of which we have alluded to earlier, imposed the four concurrent sentences without giving Leonardo any opportunity whatsoever to "speak for himself."

The denial of Leonardo's constitutional right of allocution requires us to vacate the imposition of the 1973 concurrent sentences and remand the case to the Superior Court for resentencing, which will occur only after Leonardo has exercised his constitutional right to speak for himself. Because the original sentencing justice exercised her discretion in the fashion that she did. even after learning about Leonardo's cooperative efforts with the police and because we are desirous that Leonardo in his presentence appearance have every opportunity to exercise his oratorical skills to their fullest, we hereby direct that the resentencing be performed by some Superior Court justice other than the 1973 sentencing justice.

Consequently, the petitioner's appeal is sustained, the four concurrent sentences previously imposed are vacated,[1] and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

1. Whatever the result after remand, Leonardo will not be leaving prison. He is presently serving concurrent sentences of fifty years for murder and ten years for conspiracy as the result of his participation in the strangulation death of a fellow inmate, which occurred at the Adult Correctional Institutions on May 26, 1973. *See State v. Leonardo*, 119 R.I. 7, 375 A.2d 1388 (1977).