STATE

v.

Joseph NICOLETTI.

No. 83–129–C.A.

Supreme Court of Rhode Island.

Jan. 27, 1984.

Dennis J. Roberts II, Atty. Gen., Jeffrey B. Pine, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief, Appellate Division, Paula Rosin, Asst. Public Defenders, for defendant.

OPINION

SHEA, Justice.

The defendant appeals from a Superior Court conviction after a jury trial of robbery and burglary. We reverse and remand for a new trial.

This case arises from the September 17, 1980 robbery and burglary of Mrs. Yolanda Panciera at her home in Narragansett. Mrs. Panciera and her sister, Mrs. Mary Chiarulli, who was visiting her from New York, were watching television and eating dinner in Mrs. Panciera's den when three men entered the Panciera house through the unlocked front door. They entered single file and close together. The first man had what looked like a gun. All three wore stocking masks over their faces with holes cut out for the eyes and mouth. The first two men tied the women to their chairs with tape, then all three intruders entered the bedroom.

Mrs. Panciera was able to remove some of the tape and attempted to call the police. The third man heard her doing this, came back into the den, and pulled the telephone cord out of the wall. He went back into the bedroom with the other two for a few more minutes. They then came out of the bedroom and left the house. Mrs. Panciera was able to remove the tape again and call the police from another phone in the house.

When the police arrived, the women gave a description of the three men. The first man was described to the police as being five foot nine inches tall, with a slight build, brown eyes, and sandy-colored hair, in his late twenties to early thirties. The second man was described to the police as being five foot ten, with a slight build, and fair complexion, and looking like the brother of the first man. The third man was described as six foot to six foot one inch tall with a stocky build, dark-colored hair, and dark clothing.

A few days after the incident, the Narragansett police arrested Nicholas Palumbo in the area near the Panciera house and located a car nearby registered to Charles Camardo. Palumbo was wearing clothing similar to that worn by the third man who had entered the Panciera house a few nights earlier. He also fit the description of the third man given to the police by the women.

On September 22, 1980, the Narragansett police showed Mrs. Panciera two separate photo arrays. She identified Palumbo from one of them but was unable to identify anyone else. There is a discrepancy in the evidence about whether defendant's picture was in that array.[1] The second array was not preserved.

On September 26, 1980, Mrs. Panciera was shown thirteen photos. She knew that Palumbo was a suspect because she had read about him in the newspaper and had been informed of this fact by the police. She had also previously identified him. She was told by the police officer that the photo array contained pictures of friends and associates of Palumbo. She chose four pictures but was unsure which of these four portrayed the two men who had entered her house along with Palumbo. The defendant's picture was among the four selected. The police failed to keep a record of the photo array and the names of the four selected.

On October 8, 1980, the police arrived at the Panciera house with photos for a third viewing. This time Mrs. Panciera's sister was present. They were each separately shown three different photo arrays, each containing a photo of one of the suspects. Mrs. Panciera first could not identify the picture of anyone other than Palumbo but testified that after she had a few minutes

---

1. A police report bearing Narragansett police detective John Marine's name indicated that on September 22, 1980, when Mrs. Panciera was shown a photo array containing defendant's picture, she failed to identify him. During questioning about this report, Detective Marine testified that although it bore his name, it was not typed by him, and it was incorrect. Marine claimed that the report had been made out by Captain Cook but admitted that he had reported all information concerning the crime to the captain.

to think about it she identified defendant. Mrs. Chiarulli identified Palumbo's and defendant's pictures.

The defendant was identified by Mrs. Panciera and Mrs. Chiarulli at trial. Two Narragansett police officers testified about the prior identifications of defendant as the second man to enter the Panciera house. The jury returned a verdict of guilty on both counts, and defendant appealed.

The defendant raises a number of issues on appeal: the admissibility of the pretrial and in-court identification made by the complaining witness, the denial of defendant's pretrial motion for a lineup, the admission of opinion testimony of the police officer who conducted the pretrial identifications, and the denial of defendant's right of allocution.

## I

The entire case against defendant was based solely on the identification of him by the two women. The only relevant evidence that the prosecution presented in its case in chief involved the pretrial and in-court identification of defendant by the witnesses. The identification procedure used by the police is therefore extremely crucial. This court has stated that "[a] witness' out-of-court identification of an accused is not admissible at trial if the identification procedure used was so unnecessarily suggestive and conducive to a substantial likelihood of misidentification that the accused was denied due process of law." *State v. Holland,* R.I., 430 A.2d 1263, 1269 (1981). *See Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401, 410 (1972).

■ The defendant challenges the identification procedure employed here because a series of suggestive procedures was used by the police which, when taken as a whole, amount to an unreliable identification of defendant by the complaining witness. The United States Supreme Court in *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), established a two-step procedure to determine whether the identi-

fication procedures employed violate defendant's right to due process of law. First, the court must consider the question of whether the procedures used in the identification were unnecessarily suggestive. Second, there must be a determination of whether the identification lacks independent reliability despite the suggestive nature of the procedure used.

■ On September 26, Mrs. Panciera was told that the photo array contained pictures of known associates of Nicholas Palumbo. The significance of that statement is undeniable—not only had the witness previously identified Palumbo but she was also aware that Palumbo had in fact been arrested for the robbery and burglary of her home. A suggestion made to an identifying witness that the police have reason to believe that one of the persons in the array committed the crime and has some connection with a known suspect is a relevant factor in the suggestivity analysis. *State v. Hafner,* 168 Conn. 230, 238, 362 A.2d 925, 930, *cert. denied,* 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 74 (1975). This suggestion gives the witness added incentive and impetus to identify one of these pictures rather than to identify the person they actually saw at the scene of the crime.

This case differs from our recent decision in *State v. Courteau,* R.I., 461 A.2d 1358, 1361 (1983), in which we held that the police officer's mere statement that there was a "possibility" that a suspect may be included in the photographic array did not give rise to a suggestive procedure. In the instant case not only was the witness told that there were known associates of a suspect in the photo array but defendant's picture was also included with a suspect that the witness had previously viewed.

On October 8, the police showed Mrs. Panciera three sets of photographs, each with one photograph of a different suspect. The defendant and Camardo's photographs were the only ones that were repeated from the September 26 photo array (although the certainty of this is questionable because the

photo array of September 26 was not preserved). When the suspects are the only individuals to appear in a subsequent photo array, the effect is to trigger a recognition response in the witness. *See* Taylor, *Eyewitness Identification* at 116 (1982). Mrs. Panciera may have identified defendant on October 8 as the person she thinks she saw in her house the night of the crime, but in fact she may have been recognizing him from the police photo array of September 26.

The United States Supreme Court has held that this procedure is inherently questionable:

> "[T]he witness' identification of petitioner was tentative. So some days later another lineup was arranged. Petitioner was the only person in this lineup who had also participated in the first lineup. *See* Wall, [*Eyewitness Identification in Criminal Cases*], at 64. This finally produced a definite identification.
>
> "The suggestive elements in this identification procedure made it all but inevitable that David would identify petitioner whether or not he was in fact 'the man.' In effect, the police repeatedly said to the witness, '*This* is the man.' See *Biggers v. Tennessee,* 390 U.S. 404, 407 [88 S.Ct. 979, 980, 19 L.Ed.2d 1267] (dissenting opinion). This procedure so undermined the reliability of the eyewitness identification as to violate due process." *Foster v. California,* 394 U.S. 440, 443, 89 S.Ct. 1127, 1129, 22 L.Ed.2d 402, 407 (1969).

■ All of these incidents, when considered together, establish unnecessary suggestivity. The comments made by the police officer and the repetition of only the two suspects in subsequent lineups are techniques that certainly cannot be categorized as necessary or justified because of any normal or needed police procedure. These are suggestive procedures that may lead to misidentification and denial of a defendant's due-process rights.

Furthermore, the likelihood of misidentification in this case is great. The original description of the second intruder to enter the Panciera house radically differs from defendant's physical appearance. The intruder was described as being five foot ten inches tall, of slight build, in his late twenties, and similar in appearance to the first man. The defendant is actually five foot four inches tall and 135 pounds and was eighteen years old at the time of the incident.

Mrs. Panciera did not demonstrate a high level of certainty in her identifications. On September 22, she was only able to identify one intruder. On September 26, she was only able to narrow the selection to four possibilities. On October 8, she hesitated before choosing defendant, admitting at trial that she had doubts.

The high degree of possible misidentification in light of the suggestive methods used in the pretrial identification by the police requires this court to exclude testimony concerning Mrs. Panciera's pretrial identification.

Mrs. Panciera's in-court identification of defendant also should have been excluded. The in-court identification must be excluded if the pretrial photographic identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968). Mrs. Panciera had viewed defendant under suggestive conditions on at least two occasions prior to trial and was again shown defendant's picture used in the identification procedures before trial. It would be impossible to state now that there was an independent basis for the in-court identification in light of the degree of suggestive pretrial showings. The previous showing that defendant's identification was unreliable taints the in-court identification so as to preclude any basis for holding that the witness had an independent recollection of defendant from the time the crime occurred.

If the only identification of defendant were that of Mrs. Panciera, the charges against him would have to be dismissed.

This, however, is not the case. The pretrial and in-court identification by Mrs. Panciera's sister, Mrs. Chiarulli, were not the result of impermissible suggestivity. Mrs. Chiarulli was not shown any photographs prior to her October 8 identification of defendant. The October 8 identification by itself was not unnecessarily suggestive; therefore, Mrs. Chiarulli's testimony was properly admitted.

## II

We need not decide the second issue on appeal concerning the trial justice's denial of defendant's pretrial motion for a lineup. Even if we were to determine that a lineup should have been ordered, it would be futile at this time. The long time that has elapsed since the crime occurred and the subsequent confrontations between the witness and defendant would make any lineup identification totally useless and unreliable.

## III

The third issue concerns testimony from the police officer who took the witnesses' original descriptions of defendant on the night of the crime. When asked how he would characterize the original description of the intruders, he stated: "I would say it's fairly close. The only problem would be maybe they may have made them a little too tall, but other than that, they are pretty much on the money."[2]

The defendant's objection and motion to strike were denied by the trial justice. The defendant argues that the officer's opinion invaded the province of the jury when he gave his opinion on precisely the issue that the jury had to resolve.

In *State v. Lutye,* 109 R.I. 490, 494, 287 A.2d 634, 637 (1972), this court held:

"While there is no hard and fast rule which tells us when a nonexpert may

augment his testimony of what he saw with an opinion, there are broad principles which provide some guidance. Thus, it is established that he may venture an opinion where ' * * * the subject matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, and the facts upon which the witness is called to express an opinion are such as men in general are capable of comprehending.' "

The opinion testimony must actually aid the jury in its decision making. If the jury is as capable of comprehending and understanding facts and of drawing proper conclusions from them as is the witness, no need for the opinion testimony exists. *Barenbaum v. Richardson,* 114 R.I. 87, 90–91, 328 A.2d 731, 733 (1974). *See also State v. Castore,* R.I., 435 A.2d 321, 326 (1981). The police officer's testimony concerning his opinion of the description given by the complaining witnesses was based on facts that the jurors could easily and independently have analyzed, after which they could have drawn their own conclusions. The opinion of the police officer merely puts unnecessary and irrelevant evidence before the jury. This unduly prejudiced defendant because the sole issue in this case was one of identification. The jury had to resolve the discrepancies in the witnesses' descriptions and identification in order to return a verdict of guilty. The police officer's testimony evaluating and analyzing the accuracy of their identification would therefore have been a critical factor in the jury's resolution and verdict. This can hardly be called harmless error as the prosecutor has advocated.

## IV

Finally, defendant claims his right of allocution embodied in art. I, sec. 10, of

---

2. The testimony of the police officer must be viewed in light of the actual radical difference between the original description of the intruder and defendant's actual physical appearance. Mrs. Panciera's description of the second in-

truder was that he was five foot ten inches tall and in his late twenties. The defendant is five foot four inches tall and was eighteen years old at the time of the incident.

the Rhode Island Constitution was violated because he was not allowed to address the court prior to the pronouncement of sentence. We agree.

A defendant in all criminal prosecutions has the constitutional right to address the court before the trial justice pronounces sentence. *Leonardo v. State,* R.I., 444 A.2d 876, 878 (1982); *Robalewski v. Superior Court,* 97 R.I. 357, 360, 197 A.2d 751, 753 (1964). The defendant in this case was not afforded the opportunity to speak before the trial justice pronounced sentence. The fact that the trial justice had a presentence report before him and afforded the defendant the opportunity to speak after the pronouncement is not sufficient. Ordinarily, a violation of a defendant's right to allocution would merely require this court to remand the case for resentencing. In the instant action, the case is being remanded for a new trial for the reasons previously stated in sections I and III above.

For these reasons, the defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court for a new trial.

Justice Weisberger, concurring in part and dissenting in part. I generally concur in the result reached by the majority because I agree that the testimony given by the police officer concerning his opinion of the accuracy of the original description of the intruders was inadmissible and prejudicial.

However, I do not agree with my colleagues in their characterization of the photographic identification display as so impermissibly suggestive as to constitute a denial of due process. I concur that under *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), a two-step analysis should be applied. The first step in the analysis is to determine whether the out-of-court identification was so unnecessarily suggestive and conducive to a substantial likelihood of misidentification that the accused will be denied due process of law unless the reliability of the identification can be independently established by the

second step of the analysis. *State v. Courteau,* R.I., 461 A.2d 1358, 1361 (1983); *see Neil v. Biggers,* 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401, 410–11 (1972); *State v. Holland,* R.I., 430 A.2d 1263, 1269 (1981).

In determining whether an identification is sufficiently suggestive to exceed constitutional limitations, it is well to examine the standards that have been set by the Supreme Court of the United States. The basic standard was set forth in *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968), wherein the Court observed:

> "[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to *a very substantial likelihood of irreparable misidentification.*" (Emphasis added.)

The only case in which the Supreme Court has determined that an identification procedure was violative of due process was *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). In that case the accused, who was nearly six feet tall, was first placed in a lineup with two others whose height was approximately five feet five inches or thereabouts. The accused was also wearing a leather jacket similar to that worn by the robber. The other two were not. Even under these circumstances the accused was not identified. Thereafter, he was brought face to face in confrontation with a witness. The witness still expressed uncertainty. A week or ten days later, another lineup was held with five men, of whom defendant was the only one who was in the first lineup. On this later occasion the witness identified the accused. *Id.* at 441–42, 89 S.Ct. at 1128, 22 L.Ed.2d at 405–06.

The next case in which the Court held the identification procedure to be impermissibly suggestive was *Neil v. Biggers, supra.* In

that instance the victim of a rape faced the suspect at the station house in a one-to-one confrontation since no other persons were found to be available who might resemble the somewhat unusual physical characteristics of the accused. Although the showup procedure was found by the Court to be unnecessarily and impermissibly suggestive, the identification was ultimately determined to be sufficiently reliable so as to overcome a due-process challenge. *Neil v. Biggers*, 409 U.S. at 201, 93 S.Ct. at 383, 34 L.Ed.2d at 412.

In *Manson v. Brathwaite, supra,* the out-of-court identification by an officer from a single photograph was conceded by the State of Connecticut to be unnecessarily and impermissibly suggestive. The in-court identification, however, was determined to be sufficiently reliable in order to meet the requirements of due process. 432 U.S. at 117, 97 S.Ct. at 2254, 53 L.Ed.2d at 155–56.

In applying the foregoing principles to the facts of the case at bar, I am of the opinion that the mere statement that some of the photographs included pictures of known associates of Nicholas Palumbo (who had already been identified as one of the intruders) was not so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. The display included a number of photographs of men other than defendant. The police did not suggest that any of Palumbo's known associates were probably present at the time of the instant criminal activity. I believe that this statement was not significantly more suggestive than that contained in *State v. Courteau, supra,* in which an officer suggested that there was a possibility that the guilty person might be presented in a photographic array. 461 A.2d at 1360. Whether articulated or not, there is always the implicit understanding by the witness as well as by the police that a person or persons represented by one or more pictures in a photographic array, or persons in a lineup may be suspected of participation in the crime to which the identification relates.

Although I agree that it is better that the police make no suggestive comments when displaying either photographs or persons in a lineup for identification, we should be careful not to exceed the standards that the Supreme Court of the United States has set in determining the constitutional validity of confrontations for identification. A state court may neither exceed nor diminish the federal due-process standards established by the Supreme Court of the United States. *See, e.g., Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

Since I believe we have set standards more stringent than those of the Supreme Court of the United States in respect to suggestiveness, I respectfully dissent from that portion of the majority opinion.