STATE

v.

Anthony DeCIANTIS.

No. 2001–149–M.P.

Supreme Court of Rhode Island.

Jan. 16, 2003.

Aaron L. Weisman, Providence, for Plaintiff.

Marie T. Roebuck, Providence, for Defendant.

Before WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

The distinction between an illegal sentence and one that was illegally imposed lies at the heart of this case. Under Rule 35(a) of the Superior Court Rules of Criminal Procedure:

> "The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner * * * within one hundred twenty (120) days after the sentence is imposed, or within one hundred twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment or dismissal of the appeal * * *."

Petitioning for certiorari, the state asks us to reverse a recent Superior Court order that vacated the consecutive life sentence of the respondent, convicted serial murderer Anthony DeCiantis (DeCiantis). Seventeen years after the court imposed this sentence, a Superior Court motion justice granted DeCiantis's motion to vacate it, ruling that it was void because the original sentencing justice failed in 1984 to afford DeCiantis his right of allocution before he imposed the sentence.[1] The state contends that the motion justice improperly allowed DeCiantis to invoke Rule 35 in seeking to vacate his sentence because the 120–day period for filing a motion to correct an illegally imposed sentence expired many years ago. DeCiantis, however, argues that the motion justice properly determined that his allocutionless sentence was not merely illegally imposed, but also illegal. Therefore, he contends, under Rule 35 the court could correct it at any time by vacating the illegal sentence.

Because the Superior Court sentenced DeCiantis to a permissible consecutive life sentence for having committed the crime of murder—albeit without first affording him his right of allocution—it imposed a legal sentence for this crime in an illegal manner. Such a sentence could be corrected only if DeCiantis filed a timely motion to do so within the limited 120–day period specified in Rule 35. But he failed to do so. Thus, because DeCiantis's motion to correct the sentence was untimely under Rule 35, we reverse, quash the order that vacated the sentence, and reinstate the challenged sentence and conviction.

### Travel and Facts

In 1984, a jury found DeCiantis guilty of first-degree murder. *State v. DeCiantis,* 501 A.2d 365, 366 (R.I.1985). Thereafter, the Superior Court trial justice ordered a presentence report and held a sentencing

---

1. Rule 32(a)(1) of the Superior Court Rules of Criminal Procedure codified the constitutional right of allocution, providing, in pertinent part, as follows:

 "Before imposing sentence the court * * * shall address the defendant personally and ask the defendant if he or she wishes to make a statement in his or her own behalf and to present any information in mitigation of punishment."

hearing at which he sentenced DeCiantis to serve a term of life imprisonment, one that was to run consecutive to his previous life sentence for committing other murders. The court did so, however, without first affording DeCiantis his right of allocution. *See* Super.R.Crim.P. 32(a)(1) and R.I. Const. art. 1, sec. 10. Upon discovering his mistake, the sentencing justice immediately recalled DeCiantis to the courtroom and informed him that he had failed to give him an opportunity to address the court on his own behalf before the court imposed the sentence. Super.R.Crim.P. 32(a)(1). Although DeCiantis's attorney had addressed the court on behalf of his client before the court pronounced the sentence, the sentencing justice belatedly gave DeCiantis the opportunity, in the presence of his attorney, to address the court himself. After DeCiantis briefly did so, however, the sentencing justice did not vacate the sentence or resentence him, but merely adjourned without taking further action.

DeCiantis appealed his conviction to this Court, but we affirmed. *DeCiantis*, 501 A.2d at 369. He also filed several post-conviction-relief applications—none of which, however, challenged the propriety of his sentencing. *DeCiantis v. State*, 666 A.2d 410 (R.I.1995); *DeCiantis v. State*, 599 A.2d 734 (R.I.1991). Ultimately, though, in 2000—approximately fifteen years after this Court affirmed his conviction—DeCiantis moved to correct his sentence under Rule 35 and also to dismiss the indictment that led to his conviction, citing the alleged lack of a speedy trial.

DeCiantis argued to the Superior Court that his 1984 consecutive life sentence should be vacated because the sentencing justice failed to afford him his right of allocution. According to DeCiantis's interpretation of Rule 35, this omission was fatal to the legality of the sentence and required the court, per Rule 35(a), to correct such an illegal sentence "at any time." Moreover, according to DeCiantis, this sentencing error also undermined the validity of his murder indictment. In response, the state argued that the sentencing justice simply imposed the sentence in an improper manner, that it was not illegal or void, and that the Rule 35 motion to correct the sentence was untimely because DeCiantis had filed it long after the 120-day period specified in the rule had expired. After hearing these arguments, the motion justice agreed with DeCiantis and ruled that the sentence was illegal. Consequently, he vacated the consecutive-life sentence, set the matter down for resentencing, and ordered a presentence report. But the motion justice also denied DeCiantis's motion to dismiss the indictment, concluding that the state had not violated his right to a speedy trial.

The state then petitioned this Court to issue a writ of certiorari to review the order vacating the sentence. In due course, we granted the petition, issued the writ, and stayed the resentencing proceedings.

### Analysis

 "This Court limits its review on certiorari 'to examining the record to determine if an error of law has been committed.'" *City of Providence v. S & J 351, Inc.*, 693 A.2d 665, 667 (R.I.1997) (per curiam) (quoting *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I.1994)). "We do not weigh the evidence presented below, but rather inspect the record to determine if any legally competent evidence exists therein to support the findings made by the trial justice." *Id.; see also Gregson v. Packings & Insulations Corp.*, 708 A.2d 533, 535 (R.I.1998).

■ In this case, the Superior Court motion justice properly found that the sentencing justice erred in 1984 when he sentenced DeCiantis to serve a consecutive life term for committing his third murder without first affording him the right of allocution. Even though he heard from the prosecution and from DeCiantis's attorney, the sentencing justice acknowledged that he failed to afford DeCiantis the personal opportunity to address the court on his own behalf before the court sentenced him. Upon realizing his mistake, the sentencing justice arranged for DeCiantis to be brought back into the courtroom, where he belatedly afforded him the opportunity to address the court. The court did so, however, without vacating the previously imposed sentence and without resentencing DeCiantis after he exercised his right of allocution. When the sentencing justice personally asked DeCiantis if there was anything he wished to say, DeCiantis replied: "You sentence me; you send me downstairs. You made the error. You're correcting the error. What right do I have? What right do you have to do that there, because you misled the record. * * * You sentenced me to life. * * * I'm not guilty of no crime, no murder." After DeCiantis finished speaking, the sentencing justice simply adjourned the hearing without resentencing him or taking any other action.

■ "The right of allocution in this state is a right of constitutional dimension." *State v. Brown,* 528 A.2d 1098, 1105 (R.I.1987). Article 1, section 10, of the Rhode Island Constitution guarantees all persons accused of crimes in this state the liberty to speak on their own behalf before the court pronounces a sentence against them.[2] Thus, the law is settled in this jurisdiction that criminal defendants have the constitutional right to address the sentencing judge before he or she pronounces the sentence. *See* R.I. Const. art. 1, sec. 10; Super.R.Crim.P. 32; *Brown,* 528 A.2d at 1105.[3] "Rule 32(a) [of the Federal Rules of Criminal Procedure, the federal analogue to Super. R.Crim. P. 32] requires a * * * judge before imposing sentence to afford every convicted defendant an opportunity personally to speak in his [or her] own behalf." *Hill v. United States,* 368 U.S. 424, 426, 82 S.Ct. 468, 470, 7 L.Ed.2d 417, 420 (1962); *Green v. United States,* 365 U.S. 301, 304–05, 81 S.Ct. 653, 655, 5 L.Ed.2d 670, 673–74 (1961) (allowing defendant's counsel the opportunity to

---

2. Article 1, section 10, of the Rhode Island Constitution provides in pertinent part: "In all criminal prosecutions; accused persons * * * shall be at liberty to speak for themselves * * *."

3. This Court has construed the constitutional right of allocution as follows:
"[T]he constitutional liberty includes the right of an accused, as he stands at the bar after conviction awaiting imposition of sentence, to bring to the attention of the court those matters which one in his position could at common law have spoken when inquiry was made as to why sentence should not be imposed.
"* * *
"[This] liberty is a precious one. That it cannot be denied does not mean that it can

be availed of without restriction or that its enjoyment is not subject to reasonable regulation. Abridgement, however, should be exercised with care and caution and curtailment should not take place until the accused, or counsel, or both if appropriate, have had a fair and full opportunity to bring to the court's attention all information germane and of possible assistance in the determination of the sentence to be imposed. No hard or fast rule can be adopted. What is reasonable in one case may be unreasonable in another. Each case must be decided on its facts and in each instance the adoption of limitations is subject to a judicial discretion." *Robalewski v. Superior Court,* 97 R.I. 357, 360, 197 A.2d 751, 753–54 (1964).

speak does not satisfy the right of allocution); *Brown*, 528 A.2d at 1105 (remanding the case for resentencing because after pronouncing the sentence the trial justice asked the defendant if he had anything to say); *State v. Nicoletti*, 471 A.2d 613, 618 (R.I.1984) (holding that it was insufficient for the trial justice to rely upon a presentence report and then afford the defendant the opportunity to speak after sentencing him); *Robalewski v. Superior Court*, 97 R.I. 357, 361, 197 A.2d 751, 754 (1964) (holding that the court's denial of the defendant's request to be given a reasonable opportunity to explain incidents not of record and which were brought into issue by the assistant attorney general was an abuse of discretion).

In this case, the sentencing justice did not afford DeCiantis the personal opportunity to address the court until after he pronounced the consecutive life sentence. Although he quickly realized his mistake and belatedly recalled DeCiantis to the courtroom to afford him the opportunity to speak, the sentencing justice did not vacate the original sentence nor did he re-sentence DeCiantis after he exercised his right of allocution. Because the sentencing justice failed to do so, the court violated DeCiantis's right of allocution at the 1984 sentencing hearing. *See* Rule 32(a)(1) ("[b]efore imposing sentence the court * * * shall address the defendant personally and ask the defendant if he or she wishes to make a statement in his or her own behalf and to present any infor-

mation in mitigation of punishment"). Accordingly, the motion justice properly so found in 2001.

But the motion justice also ruled that the court's denial of DeCiantis' right of allocution caused the sentence to be illegal and, thus, correctible at any time. In reaching this conclusion, he relied primarily on this Court's 1964 decision in *Robalewski* and on his interpretation of article 1, section 10, of the Rhode Island Constitution. In *Robalewski*, 97 R.I. at 362, 197 A.2d at 755, the Court on certiorari reviewed "the legality of the sentencing procedure," concluding that "the sentence of the Superior Court was illegal and void" *id.* at 363, 197 A.2d at 755, because the "petitioner was denied his constitutional liberty to speak in his own behalf" before the court sentenced him for escaping from prison. *Id.* at 361, 197 A.2d at 754. In relying on *Robalewski*, however, the motion justice overlooked the fact that, with this Court's approval, the Superior Court adopted Rule 35 *after* this Court decided *Robalewski*, and thereby adopted the distinction embodied therein between illegal sentences and illegally imposed sentences.

■ Although Rule 35 permits the Superior Court to correct an illegal sentence at any time, it can correct an illegally imposed sentence only within a 120–day period after the sentence is imposed or after this Court has affirmed the judgment of conviction or dismissed the defendant's appeal.[4] *See* Rule 35. The Reporter's

---

4. Federal practice and procedure under the analogous federal rule is consistent with our interpretation of Rule 35 of the Superior Court Rules of Criminal Procedure. *See* Charles Alan Wright, *Federal Practice and Procedure: Criminal 2d*, § 585 at 395–97 (2nd ed.1982):

"In [*Hill v. United States*], the [Supreme] Court held that neither § 2255 nor [Federal Rule of Criminal Procedure] Rule 35 permitted an attack on a legal sentence im-

posed in an illegal manner, over the protest of four dissenting justices who objected to 'such a begrudging interpretation of Rule 35.' * * * In 1966 Rule 35 was amended by adding language permitting the court to correct a sentence imposed in an illegal manner. The amendment was specifically intended to overrule the holding in [*Hill*]. If the challenge is to the illegality of the manner of imposition of sentence, the motion must be made within the time limits provid-

Notes to Rule 35 distinguish between an illegal sentence and an illegally imposed sentence, as follows:

> "For purposes of the rule, an *'illegal sentence'* is one which has been imposed after a valid conviction but is not authorized under law. It includes, e.g., a sentence in excess of that provided by statute, imposition of an unauthorized form of punishment, a judgment that does not conform to the oral sentence. \* \* \* [But] *a sentence illegally imposed* is one that does not conform to the procedures required by these rules for imposition of sentence\* \* \*." (Emphases added.)

The reporter's notes to Rule 35 explicitly state that an example of an illegally imposed sentence is: "failure to accord a defendant his right of allocution under Rule 32."[5] In *State v. Tucker*, 747 A.2d 451, 454 (R.I.2000), this Court held that ordering a continuation of a defendant's remaining suspended sentence and ordering him to serve a portion of his original sentence in prison was not an illegal sentence. We provided an example of an illegal sentence; to wit: adding an additional probationary period to an original sentence.[6] *Id.*

On April 26, 1972, approximately eight years after it decided *Robalewski*, this

Court approved the Superior Court Rules of Criminal Procedure, including Rules 32 and 35, which became effective on September 1, 1972.[7] *See Order* dated April 26, 1972; *see also Letendre v. Rhode Island Hospital Trust Co.*, 74 R.I. 276, 281, 60 A.2d 471, 474 (1948) (explaining that "[a] rule of court, if promulgated under a proper exercise of judicial power to make rules for practice and procedure within that court, is given the same force and effect as a statute"). Rule 35 distinguished for the first time between an illegally imposed sentence and an illegal sentence, a rule-based distinction that did not exist when this Court decided *Robalewski* in 1964. Because this Court approved Rule 35 after it decided *Robalewski* and because the Superior Court sentenced DeCiantis in 1984 when Rule 35 was in effect, Rule 35 takes precedence and supersedes any statements in *Robalewski* that are contrary to the rule.

For this reason, we are of the opinion that the motion justice erred in relying on *Robalewski* to vacate the sentence in this case and in finding that the sentencing justice's failure to afford DeCiantis his right of allocution before the sentencing rendered DeCiantis's sentence illegal and void. On the contrary, under Rule 35 the denial of this right did not render the sentence illegal; rather, all it signified was

---

ed by the rule for a reduction of sentence. \* \* \* *The [Hill] decision clearly establishes that denial of the right of allocution does not make the sentence itself illegal, and the shorter time for a motion claiming illegality in the imposition of the sentence will apply if this is the defect."* (Emphasis added.)

5. Even in the 1976 edition of the Superior Court Rules of Criminal Procedure the example provided for a sentence illegally imposed is the denial of the right of allocution. *See* Rule 35, Reporter's Notes (1976).

6. Even more recently, in December 2001, we stated that an illegal sentence was "one that

when imposed is at variance with the statute pr[e]scribing the punishment that may be imposed for the particular crime or crimes." *State v. Murray*, 788 A.2d 1154, 1155 (R.I. 2001) (mem.). Here, DeCiantis's consecutive life sentence was not at variance with the statute prescribing the punishment that may be imposed for this particular crime of murder. Thus, it was not illegal.

7. General Laws 1956 § 8–6–2(a) provides that "[t]he rules of the superior, family, district court and the traffic tribunal shall be subject to the approval of the supreme court. Such rules, when effective, shall supersede any statutory regulation in conflict therewith."

that a legal sentence had been illegally imposed. In other words, the sentencing justice imposed a legal sentence on De-Ciantis in an illegal manner. As clearly stated in the reporter's notes to Rule 35, the denial of the right of allocution before sentencing is an example of an illegally imposed sentence. Because the law permitted the sentencing justice to impose on DeCiantis a consecutive life sentence for murder, such a sentence was not itself illegal.[8] *DeCiantis,* 501 A.2d at 366 (jury found DeCiantis guilty of murder in the first degree). Given the concurrent life sentences previously imposed upon De-Ciantis for committing other murders, the sentencing justice possessed the discretion to impose either a consecutive or another concurrent life sentence on this defendant.[9] Thus, DeCiantis' consecutive life sentence, which was a proper form of punishment for his third conviction for first-degree murder, was not an illegal sentence and the court's mistake in failing to afford DeCiantis his right of allocution simply caused the sentence to be illegally imposed, but not illegal and void.

For this reason, DeCiantis's reliance on *Robalewski,* and on the *Brown* and *Nicoletti* decisions—as well as on *Leonardo v. State,* 444 A.2d 876 (R.I.1982)—is unavailing. Unlike this case, *Leonardo* involved a petition for post-conviction relief—not a Rule 35 motion. And no one argued in *Leonardo* that the sentencing challenge was untimely or barred by the petitioner's failure to raise the allocution-denial issue in a previous petition. Further, both *Brown* and *Nicoletti* examined the legality of the sentencing process on the defendants' direct appeals from their convictions—but not, as here, on a Rule 35 motion filed many years after DeCiantis's direct appeal had concluded.

■ In addition, DeCiantis has waived any right he may have had to seek post-conviction relief based on the denial of his right of allocution.[10] Even were we to assume, without deciding, that DeCiantis could have raised this issue in the first post-conviction-relief application that he filed in 1985, he failed to do so. Once he filed that application and litigated it to judgment without challenging the legality of his sentence, "[a]ny ground * * * not so raised * * * may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert

---

**8.** General Laws 1956 § 11–23–2(a) provides that: "[e]very person guilty of murder in the first degree shall be imprisoned for life."

**9.** General Laws 1956 § 12–19–5 provides that:

"Whenever any person is convicted of any offense punishable by imprisonment, when that person is under sentence of imprisonment on a previous conviction, the court passing the subsequent sentence may sentence the person to the term of imprisonment provided by law, to commence at the completion of the term under the previous sentence or sentences."

**10.** General Laws 1956 § 10–9.1–1 provides in pertinent part:

"(a) *Any person who has been* convicted of, or *sentenced for, a crime,* a violation of law, or a violation of probationary or deferred sentence status *and who claims:*

(1) *That* the conviction or *the sentence was in violation of the constitution of the United States or the constitution or laws of this state;*
* * *
(3) *That the sentence* exceeds the maximum authorized by law, or *is otherwise not in accordance with the sentence authorized by law;*
* * *
"(b) * * * *may institute,* without paying a filing fee, *a proceeding under this chapter to secure [post-conviction] relief."* (Emphases added.)

such a ground for relief."[11] G.L.1956 § 10–9.1–8. Under § 10–9.1–8:

"All grounds for relief available to an applicant [for post-conviction relief] at the time he or she commences a proceeding under this chapter must be raised in his or her original, or a supplemental or amended, application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief."

Thus, because DeCiantis failed to raise the denial of his right of allocution when he filed his first post-conviction-relief application without raising this issue, such a ground cannot form the basis for a later application—"unless the court finds that in the interest of justice" the applicant should be permitted to do so. But DeCiantis has failed to provide us with any reasons why his belated challenge to the 1984 sentencing could not have been raised in connection with any of his three previous post-conviction-relief applications, let alone via a timely Rule 35 motion. In short, there do not appear to be any reasons why, in the interest of justice, DeCiantis should be permitted to assert such a ground for relief at this late date.

## Conclusion

Rule 35 clearly states that a court can correct an illegally imposed sentence only within 120 days after the sentencing or within 120 days after receipt by the court of a mandate from this Court, issued upon affirmance of the judgment or dismissal of the appeal. *See* Rule 35; *State v. Letourneau*, 446 A.2d 746, 748 (R.I.1982) (emphasizing "that the 120–day time period set forth in Rule 35 is jurisdictional and may not be enlarged"); *see also United States v. Ramsey*, 655 F.2d 398, 401 (D.C.Cir. 1981) (finding defendant unable to correct a sentence imposed in an illegal manner because more than 120 days had passed). DeCiantis exceeded the 120–day jurisdictional limit because he filed his Rule 35 motion to correct his sentence in 2000— sixteen years after his 1984 sentencing and fifteen years after this Court affirmed his conviction in 1985. Thus, the motion justice erred in vacating the sentence because the motion to correct the sentence was not only untimely under Rule 35, but it was also barred by § 10–9.1–8's waiver rule, which codifies the doctrine of *res judicata* as applied to petitions for post-conviction relief.

For these reasons, we grant the petition for certiorari, quash the Superior Court's order, reinstate the original sentence, and

---

**11.** To date, DeCiantis has prosecuted three different post-conviction-relief applications to judgment, and his counsel informed us at oral argument that he now is prosecuting yet another such application. He filed his first post-conviction-relief application in 1985, arguing that the trial justice not only erred when he instructed the jury, but also that DeCiantis was the victim of ineffective assistance of counsel. The Superior Court denied this application and this Court affirmed the judgment on appeal. *DeCiantis v. State*, 599 A.2d 734, 735 (R.I.1991). In 1988, a hearing justice granted his second post-conviction-relief application and decreed that DeCiantis would be eligible for parole on his two concurrent life sentences. *DeCiantis v. State*, 666 A.2d 410, 411 (R.I.1995). Lastly, a hearing justice denied his 1993 post-conviction-relief application, indicating that DeCiantis thereafter would not be eligible for parole until he served ten years on his concurrent sentences and an additional ten years on his consecutive sentence. *Id.* at 411–12. This Court on appeal affirmed the judgment of the Superior Court. *Id.* at 413.

remand the papers in this case to the Superior Court with our decision endorsed thereon.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.