Gerald M. BROWN

v.

STATE of Rhode Island.

No. 2010–228–Appeal.

Supreme Court of Rhode Island.

Dec. 2, 2011.

Gerald M. Brown, pro se, for Applicant.

Christopher R. Bush, Department of Attorney General, for State.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The applicant, Gerald M. Brown (applicant or Brown), appeals *pro se* from a judgment of the Superior Court dismissing his second application for postconviction relief. On appeal, Brown contends that the hearing justice (1) failed to provide Brown an opportunity for a full and fair hearing as a *pro se* applicant; (2) erroneously denied his claim of newly discovered evidence; (3) improperly rejected his claim of unlawful incarceration; and (4) wrongly dismissed his assertions of ineffective assistance of counsel based on prior counsels' failure to raise a statute-of-limitations defense. This case came before the Supreme Court for oral argument on October 4, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The facts underlying Brown's convictions are set forth in *State v. Brown,* 626 A.2d 228 (R.I.1993) (hereinafter *Brown I* ). The original indictment against Brown

presented four counts of sexual assault and child molestation based upon acts occurring between May 1984 and November 1988.[1] The state dismissed the fourth count of the indictment pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure, and the case proceeded to a jury trial on the remaining three counts in January of 1991. The jury convicted Brown on each count, and, after the denial of Brown's motion for a new trial, the trial justice sentenced Brown to thirty years on counts 1 and 2 and five years on count 3, to be served concurrently. This Court denied Brown's appeal from his convictions in *Brown I.*

On February 2, 1994, Brown filed his first application for postconviction relief, alleging ineffective assistance of his trial counsel. After extensive hearings in the Superior Court on February 15–16, 1995, the hearing justice[2] denied Brown's petition "on the ground that [Brown] had failed to show that he was deprived of the effective assistance of counsel pursuant to the standards set out in *Strickland v. Washington,* 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984)."[3] *Brown v. State,* 702 A.2d 1171, 1171 (R.I.1997) (mem.) (hereinafter *Brown II* ). Brown appealed from the denial of his application, and this Court affirmed the decision of the hearing justice on October 23, 1997, in *Brown II.*

On April 18, 2000, Brown filed a second application for postconviction relief in the Superior Court, this time premised on Brown's assertion of newly discovered evidence not presented at trial. In conjunction with his application, Brown also filed a motion for appointment of counsel, a pleading entitled "Facts in Support of Application For Post–Conviction Relief," and a stipulation concerning his *pro se* status at the time of filing. Included in Brown's recitation of facts to support his application was a document called "Information For Case," in which Brown enumerated a list of potential witnesses and court and hospital records he averred could be presented at an evidentiary hearing to support his innocence. In this document, Brown also referenced several medical articles and studies he argued tended to disprove expert testimony presented at trial (articles).[4] The Superior Court granted

---

1. Specifically, count 1 charged Brown with violating G.L.1956 §§ 11–37–8.1 and 11–37–8.2, as enacted by P.L.1984, ch. 59, § 2, by digitally penetrating his daughter, a person under the age of thirteen. Count 2 charged Brown with violating the same statutory provisions by engaging in vaginal intercourse with his daughter. Count 3 charged Brown with violating § 11–37–4, as amended by P.L. 1986, ch. 191, § 1, and § 11–37–5 by engaging in sexual contact with his stepdaughter. Lastly, count 4 charged Brown with violating §§ 11–37–8.3 and 11–37–8.4, as enacted by P.L.1984, ch. 59, § 2, by engaging in sexual contact with his son, a person under the age of thirteen.

2. The hearing justice who considered Brown's first application for postconviction relief was also the justice who presided at Brown's trial.

3. This Court employs the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when assessing whether an applicant should be granted relief from a conviction because of ineffective assistance of counsel. *See Page v. State,* 995 A.2d 934, 942 (R.I.2010). To satisfy this two-part inquiry, an applicant must prove that: "(1) 'counsel's performance was deficient' and (2)'the deficient performance prejudiced the defense.' " *Torres v. State,* 19 A.3d 71, 76 (R.I.2011) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052).

4. Brown here contends that he filed copies of the articles with the Superior Court; however, the hearing justice's decision on Brown's second application for postconviction relief indicates that no copies were provided to the court and that Brown's citations to the articles were incomplete. The state maintains

Brown's motion for appointment of counsel; however, appointed counsel later determined Brown's petition to be without merit and made a motion to withdraw. The Superior Court granted counsel's motion and, as a result, allowed Brown to proceed on his application *pro se*.[5]

Brown subsequently amended his application on two occasions. The first amendment, filed on December 12, 2002, set forth an unlawful incarceration argument. In his memorandum of law accompanying the first motion to amend, Brown maintained that he remained detained in violation of Rhode Island's parole statute; specifically, G.L.1956 § 13–8–10(a), discussed *infra*.[6] Brown's second amendment, filed in July 2003, proffered a claim of ineffective assistance of counsel premised on his prior counsels' alleged failure to raise a statute-of-limitations defense. That same month, Brown filed a separate pleading captioned "Correlation of Newly Discovered and Not Previously Presented Evidence to Trial Transcript," in which he more fully presented his arguments as to how the articles refuted the expert medical testimony proffered at trial. On August 21, 2003, the state moved to dismiss Brown's application pursuant to G.L.1956 § 10–9.1–8[7] based on Brown's alleged failure to raise such arguments in his first application for postconviction relief years prior.[8] The state subsequently filed several responses in opposition to Brown's application and amendments. On March 9, 2004, in reply to the state's memoranda, Brown filed additional supplemental materials.

On April 6, 2004, the hearing justice assigned to the matter requested that Brown submit a memorandum explaining why the court should not dismiss his second postconviction-relief application. Ten days later, Brown filed his "Response with Facts of Law to Judge's Request of 6 Apr. 2004," addressing each of his claims and maintaining his entitlement to a second application under § 10–9.1–8, despite questions of waiver. The hearing justice also offered Brown the opportunity to present testimonial and documentary evidence on his behalf; however, Brown declined.[9]

that the articles never were filed. The articles concern research in child sex-abuse allegations and female genital physiology.

5. The record reflects that in May 2000, Brown appeared before the Superior Court on a motion to dismiss filed by the state and that the hearing justice deferred the matter pending resolution of a constitutional challenge to Rhode Island's postconviction-relief statute that Brown had filed in the United States District Court for the District of Rhode Island. That federal case was ultimately unsuccessful from Brown's perspective.

6. Brown argues that based on this statutory provision, he was entitled to mandatory parole after serving a term equivalent to one-third of his longest sentence.

7. General Laws 1956 § 10–9.1–8 codifies the doctrine of *res judicata* in the postconviction-relief context and mandates that "[a]ll grounds for relief available to an applicant at the time he or she commences a proceeding under this chapter must be raised in his or her original, or a supplemental or amended, application." Accordingly, "[a]ny ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief." *Id.*

8. The record reflects that the state previously moved to dismiss Brown's application on May 19, 2000, based on a waiver argument.

9. No hearing transcripts on Brown's second application for postconviction relief currently exist with the appellate record before this Court; however, the hearing justice stated in his decision that Brown was provided the opportunity to present evidence on his behalf, but that he failed to do so beyond what he

On July 21, 2004, the hearing justice issued a written decision denying and dismissing Brown's application. In regard to Brown's newly discovered evidence claim, the hearing justice found that Brown proffered "no meaningful reason as to why he did not raise the issue * * * in his first application for postconviction relief[,]" in light of the fact that "all of the new evidence [Brown] reference[d] was available at the time of [Brown's] first application." Thus, the hearing justice concluded, Brown's claim premised on newly discovered evidence was barred under § 10–9.1–8. The hearing justice further determined that even if Brown's newly discovered evidence argument was not waived, the claim substantively failed. In finding such failure on the merits, the hearing justice applied the two-part test employed by Rhode Island courts in granting a new trial based on newly discovered evidence, which is likewise used in the postconviction-relief setting.[10] After applying this standard, the hearing justice determined that Brown fell far short of showing that the evidence he sought to admit constituted newly discovered evidence, citing to Brown's failure to file copies of the articles, the publication dates of the articles, and the inadmissibility of the articles absent an authenticating expert.

After determining that Brown was not entitled to postconviction relief based on his purported newly discovered evidence, the hearing justice likewise determined that Brown's statute-of-limitations argument set forth in his amended application was procedurally defective and without merit.[11] The hearing justice determined that any postconviction-relief claim by Brown based on the expiration of the limitations period with respect to certain acts of child molestation alleged in the indictment was waived by his failure to have raised such an affirmative defense at the time of trial. The hearing justice further expounded that even if Brown had preserved his statute-of-limitations claim, he would not have succeeded on such a defense based on this Court's precedential holding in *Edmond J. Brown v. State*, 841 A.2d 1116 (R.I.2004), discussed *infra*.[12]

submitted in connection with his application and accompanying memoranda. We note that the absence of transcripts in this case is not attributable to a misstep by Brown. The Superior Court docket reflects that Brown indeed ordered transcripts at the state's expense, and that certain transcripts were originally filed with this Court in 2009. However, the dormant nature of Brown's appeal in this Court required reconstruction of the lower court file, and the transcripts filed by Brown appear to have escaped integration into the reconstructed file upon expedition of Brown's appeal in June of 2010. We further note that the parties filed an agreed statement as to the record on appeal.

10. The first part of this test requires that an applicant establish that "(a) the evidence is newly discovered or available only since trial; (b) the evidence was not discoverable prior to trial despite the exercise of due diligence; (c) the evidence is not merely cumulative or impeaching but rather is material to the issue upon which it is admissible; and (d) the evidence is of a kind which would probably change the verdict at trial." *Reise v. State*, 913 A.2d 1052, 1056 (R.I.2007) (citing *Bleau v. Wall*, 808 A.2d 637, 642 (R.I.2002)). Should an applicant meet this initial threshold, "the hearing justice must then determine, in his or her discretion, whether or not the newly discovered evidence is sufficiently credible to warrant relief." *Id.* (citing *Bleau*, 808 A.2d at 642; *State v. Hazard*, 797 A.2d 448, 464 (R.I.2002)).

11. We note that the hearing justice, in his decision, addressed Brown's limitations argument as purely a statute-of-limitations claim; he did not address it as falling within the context of a claim of ineffective assistance of counsel. The hearing justice's characterization of Brown's claim is discussed *infra*.

12. While this case is cited throughout this opinion, we note that the case involves a different defendant from the applicant herein, despite the coincidence of identical surnames.

Lastly, the hearing justice considered and dismissed Brown's claim of unlawful incarceration, deeming Brown's interpretation of the pertinent parole statutes as fundamentally flawed and "contrary to the legislature's clear intent" in enacting § 13–8–10. Accordingly, the hearing justice denied and dismissed Brown's second application for postconviction relief in its entirety.

On July 22, 2004, Brown filed a notice of appeal in Superior Court. A final judgment reflecting the hearing justice's decision was entered on October 5, 2006.[13] This Court docketed Brown's appeal on July 1, 2010, after the parties filed an agreed statement of facts on June 3, 2010.

## II

### Issues on Appeal

On appeal, Brown asserts several errors committed by the hearing justice in denying his second application for postconviction relief. These assertions may be considered as four distinct arguments: (1) the hearing justice denied Brown a full and fair hearing on his *pro se* application in contravention of his Sixth Amendment rights (Brown maintains that the hearing justice improperly prohibited him from presenting oral argument, submitting his alleged newly discovered evidence, and subpoenaing witnesses to testify on his behalf); (2) the hearing justice erroneously denied his claim of newly discovered evidence by classifying Brown's claim as waived and alternatively finding the claim to be without merit; (3) the hearing justice wrongly interpreted the language of § 13–8–10(a) in considering and denying Brown's unlawful-incarceration claim; and (4) the hearing justice mistakenly deemed

Brown's statute-of-limitations argument as waived and otherwise without merit. (Brown asserts that the failure to raise his limitations defense stemmed from the ineffective assistance of his prior attorneys.) In addition to these primary contentions, Brown mounts a procedural challenge to the hearing justice's consideration of the state's motion to dismiss his second application for postconviction relief. Specifically, Brown alleges that the hearing justice was barred from considering the pending motion because the state had previously moved twice to dismiss the application, and those motions were either denied or withdrawn.

## III

### Standard of Review

■■■ The postconviction remedy, set forth in § 10–9.1–1, provides that "one who has been convicted of a crime may seek collateral review of that conviction based on alleged violations of his or her constitutional rights." *Lynch v. State*, 13 A.3d 603, 605 (R.I.2011). The remedy is likewise available to any person convicted of a crime who alleges that "the existence of newly discovered material facts requires vacation of the conviction in the interest of justice." *DeCiantis v. State*, 24 A.3d 557, 569 (R.I.2011) (quoting *Page v. State*, 995 A.2d 934, 942 (R.I.2010)); *see also* § 10–9.1–1(a)(4). An applicant for such relief bears "[t]he burden of proving, by a preponderance of the evidence, that such relief is warranted" in his or her case. *State v. Laurence*, 18 A.3d 512, 521 (R.I.2011) (quoting *Mattatall v. State*, 947 A.2d 896, 901 n. 7 (R.I.2008)). In reviewing the denial of postconviction relief, this Court

---

**13.** The final judgment indicates a Superior Court clerk's office date stamp of May 25, 2006; however, the actual signing of the judgment by the hearing justice took place on October 5, 2006. Brown's appeal, albeit filed prematurely, is considered timely by this Court. *See Otero v. State*, 996 A.2d 667, 670 n. 3 (R.I.2010).

affords great deference to the hearing justice's findings of fact and will not disturb his or her ruling "absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence." *Page*, 995 A.2d at 942 (quoting *State v. Thomas*, 794 A.2d 990, 993 (R.I.2002)). However, "[w]e review *de novo* 'any postconviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.' " *Cote v. State*, 994 A.2d 59, 63 (R.I.2010) (quoting *Bleau v. Wall*, 808 A.2d 637, 641–42 (R.I. 2002)).

## IV

## Discussion

### A

### Full and Fair Opportunity to Litigate

█ On appeal, Brown contends that the hearing justice violated his right to proceed *pro se* on his application for postconviction relief "by not allowing the [applicant] to argue verbally his action nor to bring forward witnesses in the court room for direct examination of pertinent information of Intrinsic Value to the innocence of the [applicant]." Brown further asserts that he was not permitted to fully participate in pre-hearing discovery, arguing that the hearing justice prevented him from subpoenaing documentation or witnesses to present before the Superior Court. Brown argues that not only was he precluded from presenting his alleged newly discovered evidence, but also evidence "not previously presented" during the Superior Court's review of his first application for postconviction relief in 1995.[14]

█ In asserting the alleged limitation by the hearing justice of Brown's ability to represent himself, Brown cites to the Sixth Amendment to the United States Constitution.[15] We lay emphasis on the civil nature of postconviction-relief proceedings and note that, while § 10–9.1–5 provides for the representation of indigent individuals in such proceedings, the protections afforded under the Sixth Amendment apply to criminal prosecutions.[16] *See*

14. Brown maintains that because the hearing on his first application for postconviction relief was "bifurcated" by the hearing justice and the hearing justice dismissed the application after the first portion of the hearing, he was unable to present his entire repertoire of testimonial and documentary evidence. This Court notes that in Brown's first application for postconviction relief, Brown set forth an ineffective-assistance-of-counsel argument. As such, the hearing justice in that matter reviewed Brown's assertion based on the standard set out in *Strickland*. *Brown v. State*, 702 A.2d 1171, 1171 (R.I.1997) (mem.) (*Brown II*). Because the hearing justice found that Brown failed to satisfy the first prong of the *Strickland* test, the hearing justice determined that no further review of the claim was necessary under the second prong, thus explaining the "bifurcation" now referenced by Brown.

15. The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."

16. Section 10–9.1–5 states in pertinent part that

"[a]n applicant who is indigent shall be entitled to be represented by the public defender. If the public defender is excused from representing the applicant because of a conflict of interest or is otherwise unable to provide representation, the court shall assign counsel to represent the applicant." As set forth in *Shatney*, counsel for an applicant, upon notice to the applicant "may re-

*Shatney v. State,* 755 A.2d 130, 135 n. 2 (R.I.2000) (recognizing that "no federal constitutional right to counsel exists in post-conviction relief proceedings"). Rather, the proper lens through which Brown's argument must be examined is Rhode Island's Postconviction Remedy Statute, chapter 9.1 of title 10, and more particularly § 10–9.1–7, which governs a hearing justice's procedural methodology upon review of an application for postconviction relief. Based on that statutory provision, a hearing justice's decision to permit an applicant to subpoena witnesses, present oral argument, or submit any evidence is entirely discretionary. *See* § 10–9.1–7 ("The court *may* receive proof by affidavits, depositions, oral testimony, or other evidence and may, if deemed appropriate, order the applicant be brought before it for the hearing.") (emphasis added). Moreover, this Court has held that the summary dismissal of an applicant's application for postconviction relief does not require an evidentiary hearing, so long as an applicant is provided with an opportunity to respond to the court's proposed dismissal. *Sosa v. State,* 949 A.2d 1014, 1017 (R.I.2008); *see* § 10–9.1–6(b), (c). "If the applicant's reply reveals that there are no genuine issues of material fact in dispute, then an evidentiary hearing need not be provided and the court can proceed to rule on the application without a hearing." *O'Neil v. State,* 814 A.2d 366, 367 (R.I. 2002) (mem.) (citing *Toole v. State,* 713 A.2d 1264, 1266 (R.I.1998)).

Here, despite Brown's contention that he was prohibited from subpoenaing witnesses or submitting documentary evidence, the hearing justice explicitly stated in his decision that Brown was "offered the opportunity to present testimonial or documentary evidence which he declined." Furthermore, the hearing justice requested that Brown submit a memorandum to clarify his claims and address why his second application for postconviction relief should not be dismissed; Brown complied with this request, filing a sixteen page reply. Prior to this responsive memorandum, Brown had filed extensive memoranda and other documents in association with his application and subsequent amendments.

Although a hearing justice's failure to notify an applicant of the proposed dismissal of his or her postconviction-relief application absent a hearing constitutes reversible error, *State v. Frazar,* 776 A.2d 1062, 1063 (R.I.2001) (mem.), we are of the opinion that the hearing justice in this case provided Brown sufficient opportunity to respond to the proposed dismissal of his application in accordance with § 10–9.1–6(b). After considering Brown's response, the hearing justice concluded that the application could be summarily decided without an evidentiary hearing. Moreover, Brown declined to submit any testimonial or documentary evidence following an offer by the hearing justice that he do so. Accordingly, we find that the hearing justice followed the proper procedure set forth in Rhode Island's Postconviction Remedy Statute, chapter 9.1 of title 10, and did not limit Brown's ability to proceed fully and fairly on his *pro se* application.

## B

### Newly Discovered Evidence

■ Brown's second appellate contention centers on alleged newly discovered

---

quest permission from the court to withdraw, based upon an assessment that the application [for postconviction relief] has no arguable merit." *Shatney v. State,* 755 A.2d 130, 135 (R.I.2000); *see also State v. Laurence,* 18 A.3d 512, 523–24 (R.I.2011). If the court

"agrees that those grounds appear to lack any arguable merit, then it shall permit counsel to withdraw and advise the applicant that he or she shall be required to proceed pro se, if he or she chooses to pursue the application." *Shatney,* 755 A.2d at 135.

evidence not presented at Brown's trial—namely the articles, documents and witnesses listed in his second postconviction-relief application and in his additional pleading entitled "Correlation of Newly Discovered and Not Previously Presented Evidence to Trial Transcript." In addressing this claim, the hearing justice noted that Brown had not submitted copies of the articles for the Superior Court's review,[17] and that "all of the new evidence" that Brown referred to was available at the time of Brown's first postconviction-relief application. Thus, the hearing justice deemed Brown's claim as waived in accordance with § 10–9.1–8. We agree.

 Section 10–9.1–8, which codifies of the doctrine of *res judicata* within the postconviction-relief context, bars "relitigation of the same issues between the same parties" after a final judgment has entered in a prior proceeding. *Figueroa v. State*, 897 A.2d 55, 56 (R.I.2006) (mem.) (quoting *Carillo v. Moran*, 463 A.2d 178, 182 (R.I.1983)). An applicant is likewise precluded from raising new issues in a subsequent application, where such issues were not set forth in the first postconviction-relief application, and the applicant fails to establish a reason why his or her claims could not have been presented initially. *See Ramirez v. State*, 933 A.2d 1110, 1112 (R.I.2007). The limited and narrow exception to this bar under § 10–9.1–8 provides that issues which were "finally adjudicated or not so raised" may nonetheless be the basis for a successive application if the court finds it to be "in the interest of justice" to permit the applicant to assert such a ground for relief. *Mattatall*, 947 A.2d at 905. Although a claim of newly discovered evidence may certainly constitute the basis for an applicant's subsequent application for relief, such is not the case here. The hearing justice correctly determined that the evidence described by Brown in his second application existed at the time of his first application and that Brown thus was required to raise his claim based on this alleged newly discovered evidence in his initial application.[18] Furthermore, upon consideration of the record before this Court, we are in line with the hearing justice's conclusion that Brown's claim of newly discovered evidence failed to fall within the "interest of justice" exception allowing for successive applications for postconviction relief. *See Miguel v. State*, 924 A.2d 3, 4–5 (R.I.2007) (mem.).

Based on our conclusion that Brown's claim of newly discovered evidence was appropriately deemed waived by the hearing justice, we need not address whether that claim had any possible merit.

## C

### Unlawful Incarceration

 Brown's next argument on appeal is grounded in his contention that he has been unlawfully incarcerated since 2000 in violation of what Brown maintains is a mandatory parole requirement under § 13–8–10(a).[19] This provision of the parole statute states:

---

**17.** This Court notes that "[a]ffidavits, records, or other evidence supporting [an applicant's] allegations shall be attached to the application or the application shall recite why they are not attached." Section 10–9.1–4.

**18.** In Brown's second postconviction-relief application, the enumerated articles (that have completed citations) list publication dates in 1991, 1992, and 1997. Additional articles identified in Brown's subsequent pleading were allegedly published in 1987, 1988, 1989, 1990, and 1991. Two of the articles listed by Brown indicate dates of publication in 1997, but none of the articles, as discussed, were filed with Brown's application.

**19.** This Court has held that the postconviction-remedy statute is a proper vehicle for raising limited objections to the proceedings of the parole board. *See State v. Ouimette*,

"(a) If a prisoner is confined upon more than one sentence, a parole permit may be issued whenever he or she has served a term equal to one-third (1/3) of the aggregate time which he or she shall be liable to serve under his or her several sentences, unless he or she has been sentenced to serve two (2) or more terms concurrently, in which case the permit shall be issued when he or she has served a term equal to one-third (1/3) of the maximum term he or she is required to serve."

Brown contends that the Legislature's use of the word "shall" in the second clause, addressing concurrent sentencing situations, required the parole board to issue to him a parole permit upon serving one-third of his longest sentence. Brown's completion of one-third of his maximum sentence occurred in 2000 after ten years of incarceration, at which time the board denied him parole. After considering the language of the provision, the statutory parole scheme as a whole, his perception of legislative intent, and applicable precedent, the hearing justice rejected Brown's proposed interpretation of § 13–8–10(a) and determined his unlawful custody claim to be without merit.

The parole board is authorized by § 13–8–9 to issue parole permits to prisoners "whose sentence is subject to its control" in a discretionary fashion "whenever that prisoner has served not less than one-third (1/3) of the term for which he or she was sentenced," with the exception of prisoners sentenced to life or classified as habitual offenders under G.L.1956 § 12–19–21. When a prisoner is serving multiple sentences, the provisions of § 13–8–10, titled "Prisoners subject to more than one sentence," generally come into play.[20] Brown's contention—that the second clause of § 13–8–10(a) creates a separate, nondiscretionary parole mechanism for prisoners serving concurrent sentences—is wholly without merit. This Court explicitly held otherwise in *DeCiantis v. State,* 666 A.2d 410 (R.I.1995), when faced with a similar challenge invoking § 13–8–10(a) by the postconviction-relief applicant in that matter. In *DeCiantis,* the applicant, then serving two concurrent life sentences and a consecutive life sentence, asked this Court to require his parole on the two concurrent life sentences after only ten years, even though a prisoner serving just one life sentence consecutively to another life sentence must wait twenty years before seeking parole. *DeCiantis,* 666 A.2d at 411. DeCiantis premised his argument on the second clause of § 13–8–10(a) and asserted that the clause created a distinct mandatory parole procedure for prisoners serving concurrent sentences. *DeCiantis,* 666 A.2d at 412. Although we ultimately determined that § 13–8–13 governed DeCiantis's case as opposed to § 13–8–10, we nonetheless concluded that DeCiantis's reading of § 13–8–10(a) "misconstrue[d] the clear intent of the General Assembly" and further noted that "[t]he applicant

117 R.I. 361, 363, 367 A.2d 704, 706 (1976); *see also Bernard v. Vose,* 730 A.2d 30, 32 (R.I.1999) (mem.).

**20.** In cases involving life prisoners or prisoners with lengthy sentences, however, the provisions of § 13–8–13 instead apply. Section 13–8–13 reads in pertinent part:

"(a) In the case of a prisoner sentenced to imprisonment for life, a parole permit may be issued at any time after the prisoner has served not less than ten (10) years imprisonment provided, that:

"(1) In the case of a prisoner serving a sentence or sentences of a length making him or her ineligible for a permit in less than ten (10) years, pursuant to §§ 13–8–9 and 13–8–10, the permit may be issued at any time after the prisoner has served not less than ten (10) years imprisonment."

would have this Court read the clause relating to concurrent sentences in isolation from the preceding clause." *DeCiantis,* 666 A.2d at 413.

While the factual circumstances of DeCiantis's sentencing are distinguishable from the sentences imposed in this case, both DeCiantis and Brown advocated an interpretation of § 13–8–10(a) that would result in the mandatory parole of any prisoner serving concurrent sentences upon the completion of one-third of his or her maximum sentence. As we stated in *DeCiantis,* and as we emphasize now, such a reading of this provision ignores the discretion imparted upon the parole board throughout the parole statute as a whole and flouts the clear intent of the Legislature in enacting this statutory scheme. *See DeCiantis,* 666 A.2d at 413. The hearing justice likewise recognized the reasoning and holding announced in *DeCiantis* and acknowledged the discretionary nature of the parole board's procedure set forth under § 13–8–10 and throughout the remainder of the parole statute. Accordingly, we find no error in the hearing justice's dismissal of Brown's claim of unlawful incarceration.[21]

## D

### Statute of Limitations

■ On appeal, Brown contends that the hearing justice erred by adjudging Brown's statute-of-limitations argument waived and otherwise without merit. It is undisputed that Brown failed to raise such

a defense at trial, during the appeal of his convictions, or within the context of his initial postconviction-relief proceedings. Brown asserts, however, that he learned of a potential limitations issue only upon receipt of his "complete files" on June 21, 2003, after the Superior Court granted him permission to proceed as a *pro se* applicant. Brown maintains that all his prior attorneys failed to raise this purported statute-of-limitations issue and therefore rendered him ineffective assistance at all stages of representation.

Specifically, Brown refers to G.L.1956 § 12–12–17, which before it was amended on June 25, 1985, did not except child molestation offenses from the general three-year statute of limitations.[22] Because counts 1 and 2 of his April 1989 indictment alleged acts of molestation occurring between May 2, 1984, and November 7, 1988, Brown avers that the three-year statute of limitations in effect up until the date of the 1985 amendment attached to any alleged acts occurring prior to that amendment and that the charges founded upon such acts were therefore barred. Brown further asserts that he did not knowingly and intelligently waive this statute-of-limitations defense.

In reviewing Brown's claim, the hearing justice noted that Brown failed to raise a statute-of-limitations defense at trial and concluded that Brown had indeed waived his right to assert such an argument in his application for postconviction relief. We agree with the hearing justice's determination as to Brown's untimely assertion of

---

21. We note that even if Brown's case was governed by § 13–8–13, the outcome of his unlawful-incarceration claim remains the same. Under § 13–8–13(a)(1), Brown would have been eligible for parole after serving "not less than ten (10) years imprisonment" and a parole permit "may" have been issued at the board's discretion.

22. The June 25, 1985 amendment excepted both first-degree and second-degree child molestation from the general three-year statute of limitations for criminal offenses. *See* G.L. 1956 § 12–12–17, as amended by P.L.1985, ch. 195, § 1. The statute was subsequently amended in 1988 (P.L.1988, ch.15, § 1) to explicitly provide that no limitations period attached to either offense.

his limitations claim. This Court has unequivocally held that the expiration of a statute of limitations is an affirmative defense that must be raised at or before trial or it is waived. *See State v. Lambrechts,* 585 A.2d 645, 648 (R.I.1991); *see also Edmond J. Brown,* 841 A.2d at 1121.

■■■ Moreover, even if preserved, Brown's statute-of-limitations argument would be unavailing. As articulated by the hearing justice, this Court previously rejected such an argument when confronted with very similar facts in *Edmond J. Brown.*[23] In that case, three counts of the defendant's 1988 indictment charged the defendant with child molestation for acts occurring between May 4, 1984, and April 12, 1985—a time frame that commenced only two days after the applicant's in this matter. In that case, the defendant contended that the former three-year statute of limitations for child molestation expired before he was indicted with respect to acts alleged in his indictment. As the applicant argues here, the defendant in *Edmond J. Brown* maintained that the statutory amendment to § 12–12–17, which eliminated the three-year statute of limitations for such cases, could not be applied retroactively to the offenses with which he was charged. *Edmond J. Brown,* 841 A.2d at 1120. This Court ultimately deemed the defendant's argument as waived; however, we stated that "[a]lthough counts 4 through 6 charged [the defendant] with child molestation for criminal acts occurring between May 4, 1984, to April 12, 1985, § 12–12–17 was amended in 1985 to include the newly enacted child-molestation statute as one of the crimes not subject to the statute of limitations." *Edmond J. Brown,* 841 A.2d at 1121–22. Thus, Brown's contention here on appeal, which is identical to that considered in *Edmond J. Brown,* would be meritless regardless of his waiver.[24]

## E

### Procedural Claim

Brown also argues on appeal that the hearing justice erred in considering the state's motion to dismiss because, according to him, the state previously (1) moved to dismiss the application in 2000, and that motion was denied, and (2) moved to dismiss the application in 2002, and that motion was withdrawn. Brown cites no case law to support this argument and, contrary to his contention, the record on appeal is wholly devoid of any indication that any prior motion to dismiss filed by the state was denied or withdrawn. The available transcript excerpts instead reveal that the state's motion made in 2000 was deferred pending resolution of Brown's federal court matter and that hearing on the motion was again deferred on July 16, 2002 for determination of attorney. Accordingly, Brown's procedural challenge is unavailing.

## V

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior

---

23. In *Edmond J. Brown v. State,* 841 A.2d 1116 (R.I.2004), we considered on certiorari the denial of the defendant's application for postconviction relief. We previously had considered appellate contentions by the defendant in both *State v. Edmond J. Brown,* 574 A.2d 745 (R.I.1990) (vacating convictions and remanding for new trial) and *State v. Edmond J. Brown,* 619 A.2d 828 (R.I.1993) (affirming convictions).

24. Despite Brown's presentation of his statute-of-limitations argument within the context of an ineffective-assistance-of-counsel framework, we note that because the underlying statute-of-limitations argument is without merit, there is no indication that Brown's trial counsel was deficient by failing to raise this defense. Accordingly, we find no error in the hearing justice's analysis, and resultant dismissal, of this particular claim.

Court denying Brown's second application for postconviction relief. The record may be remanded to Superior Court.