December 20, 2024

**Supreme Court**

No. 2022-76-M.P.
(NM 18-337)

Charles Smith           :

v.                      :

State of Rhode Island.  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Charles Smith

v.

State of Rhode Island.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.** The petitioner, Charles Smith (petitioner), seeks review of an October 27, 2021 judgment of the Superior Court denying his application for postconviction relief. On April 6, 2023, we granted the petition for writ of certiorari and subsequently issued an order directing the parties to appear and show cause why the issues raised in the petition should not be summarily decided. After considering the parties' written and oral submissions and carefully reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## Facts and Travel

The factual background of this case is described in our previous decision concerning petitioner's direct appeal of his conviction. *State v. Smith*, 766 A.2d 913, 915-18 (R.I. 2001). Accordingly, we shall recount only those facts necessary for our analysis of the issues relevant to this petition.

On February 13, 1998, petitioner was found guilty of first-degree murder for the brutal stabbing of Kristen Benard (Benard), the sixteen-year-old daughter of petitioner's then-wife. *Smith*, 766 A.2d at 915, 918. Benard was stabbed multiple times, and petitioner admitted to having intercourse with her corpse. *Id.* at 916-17. The jury determined that the murder was committed by torture and aggravated battery. *Id.* at 918. On April 20, 1998, petitioner was sentenced to life imprisonment without the possibility of parole and was also sentenced to an additional fifteen years to be served consecutively as a habitual offender. *Id.*

On appeal, petitioner argued (1) that the trial justice erred in admitting petitioner's custodial statements to police; (2) that a sentence of life without parole was improper due to mitigating factors—including his serious mental illness, troubled upbringing, and lack of premeditation; and (3) that the trial justice erred in determining that petitioner was a habitual offender. *Smith*, 766 A.2d at 918, 920, 923. We largely rejected these contentions. *See id.* at 925.

First, we determined that petitioner's confession to police had been voluntary and occurred after police read petitioner his *Miranda* rights. *Smith*, 766 A.2d at 919-20. Next, we dispatched the notion that the trial justice improperly sentenced petitioner to life without the possibility of parole. *Id.* at 923. Specifically, we rejected petitioner's argument that his heinous crime was not premeditated. *Id.* at 922.

Additionally, and most pertinent to this matter, we determined that petitioner's failure to take his anti-psychotic medication prior to the killing did not require a more lenient sentence than life without the possibility of parole. *Smith*, 766 A.2d at 923. We labeled petitioner's statement that he did not take his anti-psychotic medication because of its unpleasant side effects as "isolated" that did not, "by any stretch, support his contention that he raped and murdered [Benard] largely because he had failed to stay on his medication." *Id.* We further concluded that petitioner's unfortunate childhood did not override the other aggravating circumstances accompanying the murder. *Id.*

Finally, we vacated petitioner's consecutive sentence, concluding that the state had not met its burden of proving petitioner was a "habitual offender" under G.L. 1956 § 12-19-21(b). *Smith*, 766 A.2d at 925. Ultimately, petitioner's murder conviction and life-without-parole sentence were affirmed, and petitioner's additional fifteen-year habitual offender sentence was vacated. *Id.*

On September 7, 2018, petitioner filed a *pro se* application for postconviction relief that generally alleged that his sentence and conviction[1] were in violation of the United States Constitution and the Rhode Island State Constitution. Later, upon appointment of counsel and in his post-hearing memorandum, petitioner alleged that his application was based on ineffective assistance of counsel by failing to present mitigating evidence at sentencing. He argued that his trial counsel (1) failed to sufficiently inform the trial justice of petitioner's mental health issues and (2) neglected to present evidence that, because petitioner was not taking his medication at the time of the offense, he was incapable of inflicting the requisite harm to justify a sentence of life without parole. The state's answer to petitioner's initial *pro se* application raised the affirmative defenses of *res judicata* and laches. Moreover, the state maintained that petitioner's trial counsel was effective because she presented evidence of petitioner's mental illness while declining to call petitioner's doctor because it was a "dangerous thing to do."

At the Superior Court hearing on June 21, 2021, petitioner and his trial counsel took the stand. The petitioner testified that he and trial counsel had a positive relationship until he was offered a plea bargain. According to petitioner, he received

---

[1] In his statement filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure, and later at oral argument, petitioner asked the Court to "vacate his sentence (not his conviction) and resentence him to life with the possibility of parole." Accordingly, we confine our decision to his sentence only.

- 4 -

an offer approximately eight months before trial to plead guilty to first-degree murder and first-degree sexual assault for a sentence of life with the possibility of parole and a consecutive sentence of twenty-five years. The petitioner then contended that he requested that trial counsel present a counteroffer that did not require him to plead guilty to first-degree sexual assault; petitioner recalled that trial counsel was reticent to take his proposed counteroffer to the state.

Further, petitioner expressed that he was disappointed that trial counsel did not call petitioner's doctor to testify at the trial, that trial counsel did not adequately present mitigating evidence at the sentencing phase, and that she failed to present sufficient evidence related to petitioner not taking his prescribed medication at the time of the murder. Notwithstanding these contentions, petitioner admitted that he ceased taking his medication prior to the murder because of the medication's unpleasant side effects.

According to trial counsel's testimony, however, the state never proposed a sentence of less than life without the possibility of parole. She further stated that she was familiar with petitioner's background and mental health history and offered mitigating evidence to the state so that it might change its sentencing recommendation. Trial counsel testified that, although she offered mitigating evidence to the trial justice during the trial and sentencing stages, trial counsel ultimately made the strategic determination not to include testimony from

petitioner's doctor or to present evidence that petitioner decided to stop taking his prescribed medication at the time of the murder because trial counsel was concerned that those options could have a negative impact due to the fact that once the doctor was subject to cross-examination, further damage could be done. She testified that she believed that all mental health records she had were conveyed to the trial justice.

On September 13, 2021, the hearing justice filed his written decision, denying the petition for postconviction relief. The analysis began by finding that the state failed to meet its burden of proving the affirmative defense of laches and that the claim was not barred by *res judicata* as the issue of ineffective assistance of counsel had not been previously raised on appeal. The hearing justice continued by assessing petitioner's claims of ineffective assistance of counsel, utilizing the two-prong standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). Noting the heavy burden placed on a plaintiff claiming ineffective assistance of counsel, the hearing justice determined that trial counsel's performance was not defective and that even if it was, it was not unduly prejudicial towards petitioner.

Specifically, the hearing justice determined that trial counsel made a "strategic decision" not to call petitioner's doctor, because petitioner's records were contained in the presentence report (the report) and trial counsel thought it would be imprudent for the trial justice to learn that petitioner had chosen not to comply with medical orders. The hearing justice concluded that trial counsel "was a [p]ublic [d]efender

for thirty-three years" and "based on her experience, calling a doctor to testify in this scenario was a dangerous strategic move," labeling her decision "well-founded." The hearing justice stated that petitioner had failed to carry his burden of showing that trial counsel's representation fell below the objective standard of reasonableness and that trial counsel's performance "cannot be said to rise to the level of defective performance." He further found that there was no evidence that would have rendered a different outcome had trial counsel called petitioner's doctor to testify at sentencing. The hearing justice also made a specific finding that trial counsel presented both petitioner's troubled childhood and mental health issues to the court at the pretrial and sentencing stages. Accordingly, the hearing justice found that petitioner failed to meet his burden and denied his application for postconviction relief.

## Standard of Review

"The postconviction remedy, set forth in § 10-9.1-1, provides that one who has been convicted of a crime may seek collateral review of that conviction based on alleged violations of his or her constitutional rights." *Neves v. State*, 316 A.3d 1197, 1206 (R.I. 2024) (quoting *Brown v. State*, 32 A.3d 901, 907 (R.I. 2011)). The party seeking this relief retains "the burden of proving, by a preponderance of the evidence, that such relief is warranted." *Id.* (deletion omitted) (quoting *Brown*, 32 A.3d at 907). We review "*de novo* any post-conviction relief decision involving

- 7 -

questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Id.* (quoting *Brown*, 32 A.3d at 908).

In our review of a hearing justice's determinations in a postconviction proceeding, we shall not disturb his or her factual findings "absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence * * *." *Chapdelaine v. State*, 32 A.3d 937, 941 (R.I. 2011); *see also State v. Thomas*, 794 A.2d 990, 993 (R.I. 2002). We further note that this Court will not disturb credibility determinations "by a postconviction-relief hearing justice unless the defendant 'demonstrates by a preponderance of the evidence that the hearing justice was clearly wrong.'" *Rice v. State*, 38 A.3d 9, 17 n.11 (R.I. 2012) (brackets omitted) (quoting *Fontaine v. State*, 602 A.2d 521, 526 (R.I. 1992)). In addition, "[a]ccording to this Court's well settled raise-or-waive rule, issues not properly presented before the trial court may not be raised for the first time on appeal." *Cronan v. Cronan*, 307 A.3d 183, 192 (R.I. 2024) (quoting *Donnelly Real Estate, LLC v. John Crane Inc.*, 291 A.3d 987, 994 (R.I. 2023)).

**Analysis**

The petitioner first argues that trial counsel failed to convey his counteroffer to the state. The petitioner contends that he requested, on numerous occasions, that trial counsel make a counteroffer to the state's proposed plea bargain, but trial counsel declined. The petitioner submits that, in failing to convey his counteroffer

to the state, trial counsel was in violation of Rule 1.2 of the Rules of Professional Conduct, falling below the objective standard of reasonableness required by *Strickland.*

However, petitioner failed to raise the issue in his postconviction-relief proceeding in the Superior Court; therefore, it is waived. Specifically, petitioner's post-hearing postconviction-relief memorandum does not discuss an instance in which trial counsel refused to convey a counteroffer to the state whereby petitioner would have pled guilty to murder and habitual offender violations in exchange for a sentence of life with the possibility of parole. Because petitioner failed to raise this argument to the Superior Court, he is barred from doing so here. *See Cronan*, 307 A.3d at 192 ("[I]ssues not properly presented before the trial court may not be raised for the first time on appeal.") (quoting *Donnelly Real Estate, LLC*, 291 A.3d at 994).

The petitioner next argues that trial counsel acted unreasonably by failing to proffer an insanity defense at trial. The petitioner avers that he asked his attorney to call his doctor as a witness at his trial, but trial counsel declined, stating that she would call the doctor during the sentencing phase. According to petitioner, trial counsel did not adequately investigate petitioner's mental health history, leading trial counsel to erroneously conclude that an insanity defense was inadvisable. The state posits that petitioner abandoned this argument by failing to raise it in his post-hearing memorandum in the Superior Court. The state asserts that, even if that

position had been preserved for appeal, trial counsel made an informed, strategic decision not to pursue the insanity defense after sufficiently investigating and discussing the merits of the defense with petitioner.

The petitioner's post-hearing memorandum filed in the Superior Court lacks any discussion of trial counsel's purported failure to proffer an insanity defense on petitioner's behalf. Further, petitioner's memorandum before this Court declares that he does not take issue with his conviction, but instead challenges only his sentence. *See Cronan*, 307 A.3d at 192 (holding that failure to press an issue at the Superior Court level bars petitioner from advancing the claim now). Consequently, this argument is waived.

Next, petitioner argues that his trial counsel was obligated to obtain a competency evaluation, but no evidence exists suggesting that she did so. The petitioner submits that trial counsel's failure to secure the evaluation was objectively unreasonable and prejudiced petitioner. The state responds that petitioner waived his right to appeal this issue. Alternatively, the state contends that trial counsel did not have reason to question petitioner's competency until after his incarceration and was under no mandate to order such an evaluation. The state advances that it was only upon petitioner's incarceration that trial counsel determined that a competency evaluation should be performed.

Additionally, the petitioner did not raise the issue of his competency before the lower court. Therefore, petitioner waived his right to a claim of ineffective assistance of counsel on the basis of trial counsel's failure to convey his counteroffer to the state, failure to pursue an insanity defense, and failure to obtain a competency evaluation for petitioner. *See Cronan*, 307 A.3d at 192.

Lastly, petitioner contends that trial counsel should have introduced mitigating evidence at petitioner's sentencing hearing, including his mental health issues at the time of the crime, his failure to take medication prior to the crime, a determination in connection with his criminal conviction in Utah[2] that he could not weigh the costs and benefits of treatment, and his doctor's testimony. The petitioner argues that he pressed his trial counsel to call his doctor at trial and sentencing but trial counsel declined. Instead, petitioner concedes that trial counsel referred to the doctor's potential testimony as a "double-edged sword[.]" The petitioner avers that he implored trial counsel to put into evidence "everything to get the sentence down" but trial counsel neglected to do so during sentencing.

In response, the state submits that trial counsel's decision not to call petitioner's doctor during sentencing was strategic and well-founded. The state

---

[2] At his postconviction hearing, petitioner testified that he was arrested for breaking and entering while in Utah. Shortly thereafter, petitioner stated, he was ordered to be committed to Utah State Hospital. He testified that he was later paroled and returned to Rhode Island.

further argues that trial counsel testified that she presented all of petitioner's health records in her possession at the time of the proceeding and that probation created the report, which detailed his extensive mental health challenges. Additionally, the state maintains, trial counsel testified that she alerted the trial justice to petitioner's mental illness at sentencing and that she was cautious about making the trial justice aware of petitioner's decision to forgo taking his medication.

Moreover, the state proffers that petitioner failed to show that his trial counsel's purported subpar performance caused petitioner to suffer prejudice. To this point, the state notes that petitioner did not call his, or any, doctor to testify at his postconviction proceeding, making it impossible to determine that a lack of testimony at sentencing resulted in prejudice to petitioner. The state further contends that petitioner did not suffer any prejudice from trial counsel's alleged neglect to introduce medical records at sentencing. The state declares that the Newport County Medical Records reflect petitioner's long history of treatment for mental illness, including in the months immediately preceding the murder. The state concludes by pointing to the mountain of aggravating circumstances in which the murder was committed that purports to justify the sentence imposed.

This Court evaluates claims of ineffective assistance of counsel according to the two-pronged standard outlined in *Strickland*. *LeFebvre v. State*, 313 A.3d 1156, 1162 (R.I. 2024). "Under this framework, an applicant for postconviction relief first

'must establish that counsel's performance was constitutionally deficient'"; which mandates a "showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Reyes v. State*, 141 A.3d 644, 654 (R.I. 2016) (deletion omitted) (quoting *Bido v. State*, 56 A.3d 104, 110-11 (R.I. 2012)). With respect to the performance prong, "the applicant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* (brackets omitted) (quoting *Strickland*, 466 U.S. at 688). This Court, like many others, evaluates trial counsel's performance "in a highly deferential manner, * * * employing 'a strong presumption that counsel's conduct falls within the permissible range of assistance.'" *Id.* at 654-55 (quoting *Bido*, 56 A.3d at 111).

If the first prong is satisfied, the second prong requires that the petitioner then must "show that he or she was prejudiced by this deficient performance." *Reyes*, 141 A.3d at 655 (brackets omitted) (quoting *Bido*, 56 A.3d at 111). This prong requires petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694).

Here, we conclude, as the hearing justice did, that trial counsel's performance during the sentencing phase was objectively reasonable. In his decision, the hearing

- 13 -

justice noted that petitioner and trial counsel discussed calling his "mental health doctor" but that trial counsel advised petitioner that trial counsel believed it would be best not to call the doctor because his testimony could be a "double-edged sword[.]" Trial counsel testified at the postconviction proceeding that it would have been "very dangerous" to call petitioner's doctor given the risk of potentially damning cross-examination testimony that could be elicited by the state, including the fact that petitioner voluntarily ceased taking his medication in favor of drinking alcohol and, as petitioner testified, an uninhibited sex drive.

The hearing justice specifically pointed to trial counsel's testimony that it is "hard to get sympathy from a Judge or a jury if the person made a choice not to comply with their * * * medical orders." The hearing justice found that not calling the doctor was a "well-founded strategic decision[,]" particularly considering that petitioner's medical records were included in the presentencing report. In his briefing and at oral argument, petitioner did not present this Court with any reasoning—compelling or otherwise—that could meet petitioner's burden of showing the hearing justice was clearly wrong in finding trial counsel's testimony credible. Having the benefit of observing trial counsel's testimony himself, the hearing justice concluded that trial counsel made a strategic decision to submit evidence of petitioner's mental health challenges through the report while avoiding calling attention to the fact that petitioner was not taking his medication as directed.

We have previously stated that "tactical decisions by trial counsel, even if ill-advised, do not by themselves constitute ineffective assistance of counsel." *Linde v. State*, 78 A.3d 738, 747 (R.I. 2013) (quoting *Rivera v. State*, 58 A.3d 171, 180-81 (R.I. 2013)). "This Court will not meticulously scrutinize an attorney's reasoned judgment or strategic maneuver in the context of a claim of ineffective assistance of counsel." *Id.* (quoting *Rivera*, 58 A.3d at 181). The petitioner asks us to do precisely that. Doing so would create an unworkable mandate that requires all criminal defense advocates to submit every piece of potentially mitigating evidence that exists to a trial justice—strategic discretion to the wind—or risk a declaration of ineffective assistance of counsel. The petitioner has failed to meet his burden of showing that the hearing justice was clearly wrong when he concluded that trial counsel credibly testified that she did not call petitioner's mental health doctor to avoid risking disclosure that petitioner was not taking his medication as directed. *See Rice*, 38 A.3d at 17 n.11.

The record before us indicates that petitioner was assigned a seasoned trial lawyer—one with murder trial experience—who chose to present evidence of petitioner's mental health in the light trial counsel believed most favorable to petitioner. That is, trial counsel discretely introduced detailed evidence of petitioner's mental health issues without tainting the trial justice's judgment by highlighting petitioner's substance usage and sex drive as reasons for discontinuing

- 15 -

his medication. The hearing justice determined that trial counsel's testimony about her strategy was "well-founded." He based this decision on trial counsel's extensive experience as a public defender. Additionally, the hearing justice found that trial counsel submitted records to the trial justice through the presentence report. The petitioner falls woefully short of overcoming his burden of showing this conclusion was clearly wrong.

Further, the records submitted to the trial justice at sentencing show that the trial justice was informed of the petitioner's mental health treatment history at the time the petitioner received his sentence of life without parole. The report details the petitioner's extensive mental health treatment history. The report includes health records that reference the petitioner's first institutionalization at age six, and subsequent treatments at Rhode Island's Institute of Mental Health, Elmcrest Psychiatric Center in Portland, Connecticut, the Rhode Island Training School, and a two-year stay at a psychiatric facility in Utah. All of this information was in the hands of the trial justice when he determined that the petitioner's mental health issues did not mitigate the aggravating circumstances of his grisly crime. Accordingly, the petitioner's argument that trial counsel should have presented additional evidence of mental health treatment is without merit, and, therefore, we cannot conclude that trial counsel's representation was deficient. Because we have

determined that the petitioner failed to satisfy the first prong of *Strickland*, we need not go further. *Linde*, 78 A.3d at 745-46.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Charles Smith v. State of Rhode Island. |
| **Case Number** | No. 2022-76-M.P.<br>(NM 18-337) |
| **Date Opinion Filed** | December 20, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For State:<br><br>Sean Paul Malloy<br>Department of Attorney General<br><br>For Petitioner:<br><br>Jodi M. Gladstone, Esq. |